Benny CHAN; Victoria Chan, individually and as husband and wife, a marital community; Victoria Chan, as Guardian Ad Litem of Samantha Alexis Chan, Zachary Alex Chan, and Amanda Elizabeth Chan, minor children, Plaintiffs–Appellants,

v.

SOCIETY EXPEDITIONS, INC., a Washington Corporation, Defendant,

and

Discoverer, a West German corporation; Heiko Klein, a West German citizen, Defendants–Appellees.

No. 92–36868.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1994.

Decided July 27, 1994.

As Amended on Denial of Rehearing; Suggestion For Rehearing En Banc Rejected Oct. 14, 1994.

Donovan R. Flora, Seattle, WA, for plaintiffs-appellants.

Thomas F. Paul, David C. Bratz, Le Gros, Buchanan & Paul, Seattle, WA, for defendants-appellees.

Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges.

## ORDER

The opinion filed July 27, 1994, slip op. 8417, is amended as follows: [Editor's Note: Amendments incorporated for purposes of publication].

With the opinion thus amended, the panel has voted unanimously to deny the petitions for rehearing. Judge Schroeder has voted to reject the suggestion for rehearing en banc, Judges Goodwin and Norris so recommend.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.

The petitions for rehearing are DENIED and the suggestion for rehearing en banc is REJECTED.

## OPINION

GOODWIN, Circuit Judge:

Benny Chan, his wife, Victoria Chan, and their three children, including their daughter, Samantha, (collectively referred to as the "Chans"), appeal the dismissal of their damages action against Society Expeditions and Discoverer Reederei GmbH. The Chans assert personal injury and related claims against the defendants in connection with the capsizing of an inflatable raft which ferried Benny and Samantha Chan from a cruise ship to an atoll in the South Pacific, near Tahiti.

The district court held: (1) that Washington state workers compensation law barred Benny Chan's suit against his employer, Society Expeditions, Inc.; (2) that the court did not have personal jurisdiction over Discoverer Reederei, GmbH, a German corporation; and (3) that maritime law does not permit the Chans to recover damages for loss of consortium, loss of society, or emotional distress.

We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part, and remand for further proceedings.

### I.

In February 1990, Benny and Victoria Chan booked passage for themselves and their daughter, Samantha, age 7, on the cruise ship, *World Discoverer*. The *World Discoverer* is operated by Discoverer Reederei, GmbH ("Discoverer Reederei" or "Discoverer"). Benny Chan's employer, Society

Expeditions, Inc., a Washington corporation which is in the business of marketing and chartering cruise ships, chartered the *World Discoverer* for the cruise at issue. Heiko Klein, a German citizen, is the sole shareholder, chairman, and president of Society Expeditions. At the time of the relevant events, Klein was also the president and sole owner of Discoverer.

The Chans boarded the *World Discoverer* in Tahiti on March 30, 1990. The next day, passengers from the ship were ferried by inflatable raft to Makatea, a coral atoll in French Polynesia that was the first stop on the day's travel itinerary. While ferrying the last group of passengers ashore, the raft turned broadside to a wave and capsized. The passengers, including Benny and Samantha Chan, were thrown into the surf. The pilot of the raft and a passenger died in the capsizing. According to the Chans' complaint, Benny Chan sustained severe brain and head injuries, as well as other physical injuries, and Samantha Chan sustained both physical and emotional injuries.

At the time of the accident, Benny Chan was a shore-based Society Expeditions employee. He worked in the company's Seattle office, and was responsible for cabin usage and cabin inventory in support of Society's reservation system. After returning to Seattle, Benny Chan filed for state workers compensation benefits. · The Washington State Department of Labor & Industries approved the benefits application after concluding that Chan was injured in the course of employment.

The Chans filed this action on July 30, 1990 on behalf of themselves and as guardian ad litem for their three children. They asserted general maritime claims based on negligence and the doctrine of seaworthiness against three defendants: 1) Society Expeditions;[1] 2) Discoverer Reederei GmbH;[2] and 3) Heiko Klein.

The district court granted Society Expeditions' motion for summary judgment, dismissing Benny Chan's claim against it on the ground that the employer was immune from tort liability under Washington state workers compensation law. The court also dismissed Benny Chan's seaworthiness claim on the ground that his complaint alleged that he was a passenger at the time of the injury, and thus, he did not qualify as a "seaman" in order to state a claim based on the doctrine of seaworthiness. The court also granted Discoverer's motion to dismiss for lack of personal jurisdiction, and dismissed all claims for loss of consortium and emotional distress. Samantha Chan's personal injury claim against Society Expeditions has been stayed pending this appeal.[3]

## II.

### A. BENNY CHAN'S TORT CLAIM AGAINST SOCIETY EXPEDITIONS

The district court first held that the exclusive remedy provision of the Washington state workers compensation act bars recovery in tort for the personal injuries Benny Chan sustained on the *World Discoverer* cruise. For the following reasons, this was error.

■ As the district court noted, a worker who accepts state workers compensation benefits for injuries is ordinarily barred from suing his employer in tort for the same injuries. *Abraham v. Department of Labor & Indus.*, 178 Wash. 160, 34 P.2d 457 (1934). However, this bar does not apply to a worker who has a right under federal maritime law. Rev.Code.Wash. § 51.12.100, a provision of the Washington state workers compensation law, expressly provides:

(1) The provisions of this title shall not apply to a master or member of a crew of any vessel, *or to employers and workers for whom a right or obligation exists un-*

---

**1.** In January, 1992, Society Expeditions filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code. As of July 1992, the company was proceeding with a reorganization plan.

**2.** The Chans inaccurately designated Discoverer Reederei as simply, "Discoverer," in their complaint.

**3.** A second complaint arising out of the Chan family's cruise aboard the *World Discoverer* was filed on March 29, 1993. This complaint was filed only against Discoverer Reederei, in personam, and the vessel, *World Discoverer*, in rem. Action on the second complaint has been stayed pending this appeal.

*der the maritime laws* or federal employees' compensation act for personal injuries or death of such workers.

\* \* \* \* \* · \*

(4) In the event payments are made under this title prior to the final determination under the maritime laws or federal employees' compensation act, *such benefits shall be repaid by the worker or beneficiary if recovery is subsequently made under the maritime laws* or federal employees' compensation act.

Rev.Code Wash. § 51.12.100 (emphasis added).

▉ The Washington Supreme Court has held that, under this statute, a worker who accepts workers compensation benefits may nonetheless sue for his injuries under federal maritime law. *Rhodes v. Department of Labor & Indus.*, 103 Wash.2d 895, 700 P.2d 729, 731 (1985); *see also Western Boat Bldg. Co. v. O'Leary*, 198 F.2d 409, 411 (9th Cir.1952) (holding that receipt of state workers compensation benefits cannot bar a claimant's rights under federal maritime law). Subsection 51.12.100(4) requires a worker to repay state benefits if the worker recovers damages under federal law. *E .P. Paup Co. v. Director, Office of Workers Compensation Programs*, 999 F.2d 1341, 1348 n. 3 (9th Cir.1993).

▉ Society Expeditions contends that this statutory exception does not apply to Benny Chan because he is not a seaman, longshoreman, or harbor worker. It also argues that section 51.12.100 applies only in the case of a conflict between federal and state *no-fault* compensation remedies. Society Expeditions cites no authority to support these arguments. Nothing in the plain language of the statute limits the exception in any such way. We decline to do so here.[4]

▉ Accordingly, we assume for the purposes of this case that because Benny Chan recovered under the workers compensation system as a "worker," he remains a "worker" for purposes of section 51.12.100. We express no opinion whether he was injured in the scope of his employment, but the point is irrelevant on the narrow question in this case. Benny Chan has a federal maritime right to sue Society Expeditions and the operators of the vessel as a passenger, visitor, or vacationing employee on the *World Discoverer*.[5] Whether or not he is deemed to be an employee for some purposes, he still has a general claim in admiralty for negligence,[6] and adjudication of that claim is governed by federal common law. *See Kermarec v. Compagnie Generale*, 358 U.S. 625, 629, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1958); *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 203 (1st Cir.1988).[7]

**B. DISCOVERER REEDEREI: PERSONAL JURISDICTION**

The next issue is whether the district court erred in dismissing the Chans' case against

---

**4.** The district court acknowledged the maritime exemption under section 51.12.100, but found that it was inapplicable because "there is no authority to support the proposition that the [exception] applies to fault-based claims under maritime law." However, the Jones Act, 46 U.S.C.App. § 688, is a fault-based system, and recovery under the Jones Act surely falls within Washington's statutory exception.

**5.** For all that appears in the record, Benny Chan was a passenger, on vacation. Mr. Chan entered into a contract of carriage with Society Expeditions and was designated in that contract as a "passenger." The entry in the ship's log describing the capsizing, identified Mr. Chan as a passenger, as distinguished from another passenger in the raft who was identified as "staff." Mr. Chan's daily attendance record at Society Expeditions indicated a "v" for vacation on March 29 and March 30, 1990.

**6.** "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C.App. § 740.

**7.** The Chans' complaint sets forth a maritime tort within the admiralty jurisdiction of the federal courts. Maritime jurisdiction is appropriate when a potential hazard to maritime commerce arises out of an activity that bears a substantial relationship to traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 362, 110 S.Ct. 2892, 2895–96, 111 L.Ed.2d 292 (1990); *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 673, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300 (1982). An injury to a cruise ship passenger or guest caused by the capsizing of a boat or raft is a uniquely maritime injury. *See Carey v. Bahama Cruise Lines*, 864 F.2d 201, 207 n. 4 (1st Cir. 1988).

Discoverer Reederei for lack of personal jurisdiction. Discoverer Reederei contends: (1) that the Chans failed to serve the company properly, thereby failing to establish jurisdiction over it, and (2) that assertion of personal jurisdiction would not comport with due process.

### 1. Service of Process

■ Discoverer Reederei first claims that it was never served at all. The corporation argues that although the Chans personally served Heiko Klein, owner and president of Discoverer Reederei, that service was in Klein's individual capacity only and thus could not effect service against his corporation. The district court denied Discoverer's motion for summary judgment for want of service. We affirm that ruling.

Under the federal rules, foreign corporations may be served either (1) in accordance with the law of the state in which the district court is located, Fed.R.Civ.P. 4(d)(7), or (2) by delivering a copy of the summons and the complaint "to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed.R.Civ.Pro. 4(d)(3).

The Chans personally served Heiko Klein while he was in Washington state. Klein was the president and controlling shareholder of Discoverer Reederei at the time of service. The Chans' affidavits of service indicated that Klein was served "individually and in his corporate capacity as owner of Society Expeditions." Klein's ownership or status as a corporate officer of Discoverer Reederei could have been, but were not mentioned in the affidavit of service. Discoverer Reederei contends that this failure to name Klein as president of Discoverer Reederei renders defective the service against that entity. We find this argument unpersuasive on the narrow facts of this case.

■ Rule 4 is a flexible rule that should be liberally construed to uphold service so long as a party receives sufficient notice of the complaint. *United Food & Commercial Workers Union, Locals 197, et al. v. Alpha Beta Co.,* 736 F.2d 1371, 1382 (9th Cir.1984). Technical defects in a summons do not justify dismissal unless a party is able to demonstrate actual prejudice. *FDIC v. Swager,* 773 F.Supp. 1244, 1249 (D.Minn.1991); *United Food,* 736 F.2d at 1382.

■ The complaint served on Heiko Klein named Discoverer on its face and in the caption on the summons. Heiko Klein was the president and sole shareholder of Discoverer Reederei as well as of Society Expeditions. Discoverer Reederei has offered no evidence that it was prejudiced by the failure of the summons to describe Heiko Klein in all of his numerous capacities.[8] Thus, we hold that the Chans have complied with Rule 4(d)(3) by serving an officer of Discoverer Reederei. As discussed further below, the Chans also contend that Society Expeditions was the general agent of Discoverer Reederei in the state of Washington. If true, then service of process on Society would also have been effective against Discoverer Reederei. *See Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 424 n. 20 (9th Cir.1977). The district court correctly denied Discoverer's motion to dismiss for insufficiency of process.

### 2. Personal Jurisdiction

Discoverer Reederei also contends that even if service was sufficient, the Washington courts lacked personal jurisdiction over the German corporation on due process grounds.

■ Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise

---

8. Discoverer Reederei argues that the rule allowing transient or "tag" jurisdiction was never adopted in the context of a corporation. It contends that because Heiko Klein was temporarily in Washington at the time he was served, and was not conducting any business on behalf of Discoverer Reederei, service of process therefore was ineffectual. While it is true that a corporate defendant does not submit to jurisdiction by one

of its officers voluntarily entering a state, Wright & Miller, 4 *Federal Practice & Procedure,* Civil 2d § 1066–67 (1987), this situation is not what is at issue here. We hold only that service of process on Heiko Klein is effective in this instance, not that plaintiffs generally can acquire *personal jurisdiction* over corporate defendants by serving the persons who happen to own the corporation.

of jurisdiction must comport with federal due process. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 380 (9th Cir.1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

The Washington Supreme Court has held that the state's long-arm statute extends jurisdiction to the limit of federal due process. *Shute,* 783 P.2d 78 (1989). We have also interpreted Washington's long-arm statute as imposing "no limitations beyond those imposed by due process." *Shute,* 897 F.2d at 380 n. 2. Thus, because the long-arm statute is coextensive with the outer limits of due process, we need analyze only the second part of the test. *Pacific Atlantic Trading Co. v. M/W Main Express,* 758 F.2d 1325, 1327 (9th Cir.1985).

Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Discoverer Reederei argues that it does not have the requisite "minimum contacts" with the state of Washington to support personal jurisdiction. It notes that it is a German limited liability corporation, whose offices are located only in Germany. Discoverer contends that it has no agents, officers, employees, or property in Washington and does not advertise or market products or services in Washington. Further, it argues that Society Expeditions and Discoverer maintain separate books and transact all business between them as wholly independent corporations.

In *Shute,* this court held that general jurisdiction over a foreign cruise line did not exist even though it actively sought customers in the forum state. The cruise line in *Shute* had advertised in the local media, mailed brochures and paid commissions to travel agents in Washington, conducted promotional seminars in Washington, and sold vacation cruises to residents of Washington. The cruise line also had "no offices and no exclu-

sive agents in Washington, it is not registered to do business there, and it pays no taxes there." *Shute,* 897 F.2d at 381.

(i) General Agent

The Chans distinguish *Shute* by asserting that Society Expeditions was acting as a general agent for Discoverer Reederei in the state of Washington. According to the Chans, Discoverer Reederei, which is in the business of operating two ships, including the *World Discoverer,* has no other business than the carriage of passengers, and the passengers were obtained, ticketed, and supplied with cabins solely through the efforts of Society Expeditions.

The Chans cite *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406 (9th Cir. 1977), to support their argument that personal jurisdiction may exist under these circumstances. In *Wells Fargo,* the court vacated the dismissal of a defendant, Wells Fargo Express Company, A.G. ("AG"), a Liechtenstein corporation, for lack of personal jurisdiction in Nevada and remanded for further proceedings. The court said that the plaintiffs could satisfy the presence requirement if they could prove that defendant Wells Fargo Express Co., an American subsidiary of AG, over whom the court did have personal jurisdiction, was acting as AG's general agent in Nevada. *Id.* at 424.

In defining a general agent, we cited *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 121 (2d Cir.1967):

[A] foreign corporation is doing business in New York "in the traditional sense" when its New York representative provides services beyond "mere solicitation" and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.

*Wells Fargo,* 556 F.2d at 423. The court in *Wells Fargo* also stated that "whether the general agent was a subsidiary of the principal or independently owned is irrelevant." *Id.*[9]

---

**9.** Discoverer Reederei relies on *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), in arguing that courts cannot look to the activities of an affiliated corporation for the purpose of determining whether

its parent corporation was "doing business" in a state. However, courts have permitted the imputation of contacts where the subsidiary was "either established for, or is engaged in, activities

We agree that whether Discoverer Reederei used Society Expeditions as its general agent in Washington is a question of fact. The district court did not reach this question. The record does not contain enough facts to decide the issue on appeal. Very little discovery had been accomplished in this case prior to the motions for dismissal, due to an automatic stay of proceedings under 11 U.S.C. § 362. The record does not reveal, for example, what percentage of Discoverer Reederei's business came from Society Expeditions, or whether Society was the only agent in the United States for the German company. We know only that Discoverer Reederei itself did not conduct marketing activities in the United States.[10] The question whether an agency relationship between Discoverer and Society existed is material to the personal jurisdiction issue. We remand for additional findings by the district court.

### (ii) Forum Selection Clause

Discoverer Reederei also may have voluntarily submitted to the jurisdiction of the Washington courts through the forum selection clause contained in Benny Chan's passenger ticket. The ticket included a clause that stipulated that "all disputes" arising from the contract of carriage with Society Expeditions are to be litigated in the state of Washington "to the exclusion of the courts of any other state or country." [11] The definitions section of the contract stated that the contract bound the ship, as well as "its owner, its operator or charterer." [12] Discoverer Reederei admits that it is the operator of

that, but for the existence of the subsidiary, the parent would have to undertake itself." *Gallagher v. Mazda Motor of America, Inc.*, 781 F.Supp. 1079, 1083 (E.D.Pa.1992); *Wells Fargo*, 556 F.2d at 422–23.

**10.** Discoverer Reederei argues that the record is devoid of any evidence that establishes repeated or long-term chartering of the *World Discoverer* to Society Expeditions. However, the Chans have submitted disclosure documents filed by Society Expeditions in connection with its bankruptcy proceedings in which Society admits that the company enjoyed "long-term charter arrangements" with the *World Discoverer*.

**11.** This provision was included in Section 19 of the contract, entitled PLACE OF SUIT. It read: "All disputes and matters whatsoever arising under, in connection with or incident to this Ticket

*World Discoverer.*[13] Society Expeditions was the charterer.

The district court ruled that whether Society Expeditions was authorized by Discoverer to enter into contracts on Discoverer's behalf was a question of fact. However, the court held that, even assuming that Society Expeditions had the authority to bind Discoverer to the passenger ticket, the forum selection clause in it "would not provide a basis for finding that the Court has jurisdiction over Discoverer [because the] forum selection clause deals only with venue, not jurisdiction." We disagree.

■ Challenges to personal jurisdiction may be waived by either express or implied consent. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1291 (7th Cir.1989) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985)). In the commercial context, parties, for business or convenience reasons, frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. *Heller Financial*, 883 F.2d at 1290. "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id.* (citing *Burger King*, 471 U.S. at 472 n. 14, 105 S.Ct. at 2182 n. 14 (internal citation omitted)).

In *Heller Financial*, the Seventh Circuit held that a forum selection clause alone could confer personal jurisdiction. *Id.* at 1292 n. 4;

shall be litigated, if at all, in and before a court of proper venue located in the State of Washington, USA, to the exclusion of any other state or country."

**12.** In the definitions section, the contract stated: "[T]he term "SOCIETY" includes the Ship, its owner, its operator or charterer, all affiliated companies and the sales representatives and all employees of such individuals and companies."

**13.** The passenger ticket also provided that any changes in the terms of the contract must be in writing and signed by the president of Society Expeditions, who was Heiko Klein. As noted, Klein is also the president of Discoverer Reederei.

*see also Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir.1987). We agree with the Seventh Circuit, and hold that the district court erred in concluding that the forum selection clause in the passenger ticket could not confer personal jurisdiction over the parties who entered into it. We remand for the district court to decide whether Society Expeditions had the authority to bind Discoverer Reederei through the contract of carriage. If so, the forum selection clause would be an additional basis for establishing personal jurisdiction over Discoverer Reederei.

## C. LOSS OF CONSORTIUM

The Chans contend that the district court erred in holding that general maritime law precludes the Chans' claims for loss of consortium. As authority, the district court cited *Michel v. Total Transportation, Inc.*, 957 F.2d 186 (5th Cir.1992). The Chans argue that *Michel* is not squarely on point because it involved a wife's claim for loss of consortium in an action brought by a *seaman* under the Jones Act, and the district court here concluded that Benny Chan was not a seaman. While we agree that *Michel* is not on point, it does not follow, however, that the court erred in barring the loss of consortium claims.

■■■ In determining whether damages are recoverable in a negligence action brought under general maritime law, this court must look for guidance to congressional enactments in the field of maritime law, Supreme Court decisions, and relevant state legislation. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 27–28, 111 S.Ct. 317, 323, 112 L.Ed.2d 275 (1990); *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 408, 90 S.Ct. 1772, 1791–92, 26 L.Ed.2d 339 (1970). We should also, where possible, be guided by the twin aims of maritime law: achieving uniformity in the exercise of admiralty jurisdiction and providing special solicitude to seamen. *See Moragne*, 398 U.S. at 386–88, 90 S.Ct. at 1780–81; *Sea–Land Servs., Inc., v. Gaudet,*

414 U.S. 573, 577, 94 S.Ct. 806, 811, 39 L.Ed.2d 9 (1973).

Because this accident occurred on the high seas, we find instructive the remedial provisions of the Death on the High Seas Act ("DOHSA"). 46 U.S.C.App. § 761 *et seq.*[14] DOHSA limits recoverable damages in wrongful death suits to "pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C.App. § 762. This express limitation has been held to preclude recovery for nonpecuniary losses, such as loss of society or consortium, for deaths that occur on the high seas. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 624, 98 S.Ct. 2010, 2014, 56 L.Ed.2d 581 (1977); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 211, 106 S.Ct. 2485, 2488, 91 L.Ed.2d 174 (1986).

■■■ Loss of society damages are also not recoverable under the Jones Act, or under the general maritime law, for the wrongful death of a seaman. *Miles*, 498 U.S. at 31, 111 S.Ct. at 325. They are likewise unavailable in connection with the *injury* of a Jones Act seaman. *Smith v. Trinidad Corp.*, 992 F.2d 996 (9th Cir.1993). In cases involving longshoremen injured or killed on state territorial waters, however, beneficiaries can recover loss of society damages. *Gaudet*, 414 U.S. at 584, 94 S.Ct. at 814 (as limited by *Miles*, 498 U.S. at 31–32, 111 S.Ct. at 325); *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 903 (5th Cir.1994). We have also held that the beneficiaries of passengers killed or injured on *state territorial waters* can recover such damages. *Sutton v. Earles*, 26 F.3d 903 (9th Cir.1994). Such damages include "a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection." *Gaudet*, 414 U.S. at 585, 94 S.Ct. at 814.

None of the remedial schemes listed above applies to Benny Chan. He was not a seaman, so the Jones Act does not apply, nor was he injured in state territorial waters, so *Gaudet* is inapplicable. DOHSA does not apply because Benny Chan's injuries were not fatal. However, as noted above, we look to these maritime statutes for guidance in

---

**14.** DOHSA covers the death of any "person" caused by "wrongful act, neglect, or default oc-

curring on the high seas." 46 U.S.C.App. § 761.

determining what remedies should be available in an admiralty case, such as this one, that falls outside the ambit of statutory maritime law. In this case, we must decide a question for which no definitive citation to federal case law has been offered or found.

■ The Chans argue that we should allow a claim for loss of society or consortium to the dependents of a passenger *injured* in an accident at sea even though such damages are denied the dependents of a passenger *killed* at sea. This argument makes no sense. To so hold would effectively reward a tortfeasor for killing, rather than merely injuring his victim. Accordingly, we hold that loss of consortium and loss of society damages are not available in these circumstances under general maritime law. This conclusion best serves the goal of uniformity in remedies in maritime cases that the Supreme Court emphasized in *Miles.* In *Miles,* the Supreme Court sought to develop a "uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOSHA, the Jones Act, or general maritime law." *Miles,* 498 U.S. at 32, 111 S.Ct. at 325. For these reasons, we affirm the district court's dismissal of the dependent plaintiffs' loss of consortium claims.

## D. EMOTIONAL DISTRESS CLAIMS

The district court also dismissed the Chans' emotional distress claims. It concluded that the mental pain and anguish of an injured party's family is not compensable in an action under general maritime law. As authority, it cited *Sea–Land Serv. v. Gaudet,* 414 U.S. 573, 585 n. 17, 94 S.Ct. 806, 815 n. 17, 39 L.Ed.2d 9 (1974) and *Cook v. Ross Island Sand & Gravel Co.,* 626 F.2d 746, 752 (9th Cir.1980).

In *Gaudet,* the Supreme Court stated that damages for "mental anguish or grief" are *non*recoverable in a wrongful death claim by the family of a longshoreman. 414 U.S. at 585 n. 17, 94 S.Ct. at 815 n. 17. Following *Gaudet,* we held in *Cook* that the general maritime law did not allow recovery for the "mental pain and suffering of a decedent's beneficiaries" caused by the decedent's loss. 626 F.2d at 749.

However, the plaintiffs assert facts that raise claims for the negligent infliction of emotional distress. The issue there is not the emotional grief caused by losing a loved one, as discussed in *Gaudet,* and which is sometimes called "survivor's grief." Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 6–33 at 372 (2d ed. 1975). Instead, at issue here is the *psychic injury* that comes from *witnessing* another being seriously injured or killed.

Neither the Supreme Court nor this circuit has yet decided whether a plaintiff may recover for the negligent infliction of emotional distress under general maritime law. However, the Supreme Court in *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 568, 107 S.Ct. 1410, 1417, 94 L.Ed.2d 563 (1987), left open the possibility of recovery for purely emotional injury in cases such as this one. The Supreme Court stated that courts should consult state common law for guidance in resolving the issue of recovery for emotional distress. *Id.* *Buell* involved a claim brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, which creates a negligence cause of action for railroad workers against their employees. The Jones Act creates the same cause of action for seamen, and incorporates by reference the FELA. Because we look to case law developed under the Jones Act in guiding the development of the general maritime law, we find the cases interpreting FELA instructive in the case at bar.

The Supreme Court recently took up the question it left open in *Buell:* whether recovery for negligent infliction of emotional distress is available under FELA. Resolving a circuit conflict, the Court in *Consolidated Rail Corp. v. Gottshall,* —— U.S. ——, —— –––––, 114 S.Ct. 2396, 2406–07, 129 L.Ed.2d 427 (1994), answered the question in the affirmative. Declaring that common law principles are entitled to "great weight" in the analysis of the scope of FELA, the Court cited as persuasive the fact that a claim for the negligent infliction of emotional distress "is nearly universally recognized among the States today." *Id.* at, ——, ——, 114 S.Ct. at 2407, 2408. The Court also acknowledged that such a claim can be just as meritorious as one involving physical injury. "We see no reason why emotional injury should not be

held to be encompassed within [FELA's terms], especially given that 'severe emotional injuries can be just as debilitating as physical injuries.'" *Id.* at ——, 114 S.Ct. at 2408.

■ Although *Gottshall* involved a FELA claim, the Supreme Court's discussion of emotional distress claims guides us here. We see no reason to disallow meritorious emotional distress claims under the general maritime law when they are available to railroad workers under FELA and to plaintiffs in nearly all states.[15] Thus, consistent with our authority to develop the general maritime law when new situations arise that are not directly governed by congressional legislation or admiralty precedent,[16] we hold that claims for emotional distress are cognizable under admiralty law.

■ We next must decide the threshold standard that must be met by plaintiffs bringing claims for negligent infliction of emotional distress. As instructed by the Court in *Gottshall* and *Buell*, we look to state common law for guidance. At present, state courts have proposed or adopted three main theories limiting the recovery of damages for emotional distress. Under the most restrictive theory, the "physical injury or impact" rule, the plaintiff may recover emotional distress damages only if he or she suffers an accompanying physical injury or contact. *See Plaisance v. Texaco, Inc.,* 937 F.2d 1004, 1009 (5th Cir.1991), *aff'd on other grounds,* 966 F.2d 166 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 604, 121 L.Ed.2d 540 (1992). Under the next most restrictive theory, the "zone of danger" doctrine, the plaintiff may recover even though there is no physical contact, so long as the plaintiff (1) witnesses peril or harm to another and (2) is also threatened with physical harm as a consequence of the defendant's negligence.

*Plaisance,* 966 F.2d at 168; *Nelsen v. Research Corp. of Univ. of Haw.,* 805 F.Supp. 837 (D.Hawaii 1992) (adopting rule). The zone of danger test currently is followed in 14 jurisdictions. *See Gottshall,* —— U.S. at —— & n. 9, 114 S.Ct. at 2406 & n. 9 (listing states adopting rule).

■ The third theory, adopted by nearly half the states, including California and Washington, is the "bystander proximity" rule. The bystander proximity rule permits recovery, even if one is not in the zone of danger, provided the complainant: (1) is physically near the scene of the accident; (2) personally observes the accident; and (3) is closely related to the victim. *Dillon v. Legg,* 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968); *Gain v. Carroll Mill Co.,* 114 Wash.2d 254, 787 P.2d 553 (Wash.1990).

In *Gottshall,* the Supreme Court adopted the "zone of danger" test in cases for negligent infliction of emotional distress under FELA. The Court concluded that the test "best reconciles the concerns of the common law with the principles underlying our FELA jurisprudence." —— U.S. at ——, 114 S.Ct. at 2410. The Court reasoned that the zone of danger test, because it was less restrictive than the physical impact test, was "more consistent ... with FELA's broad remedial goals." —— U.S. at ——, 114 S.Ct. at 2410 The Court also noted that most jurisdictions have abandoned the physical impact test, although five states continue to adhere to it. —— U.S. at ——, 114 S.Ct. at 2408–09.[17]

■ After outlining these various tests, it is clear that we need not decide which test to adopt today to decide this appeal. None of these theories allows recovery for emotional distress when the plaintiff was not present at the accident scene. In this case, Zachary

---

15. Only one state, Alabama, has held that negligent infliction of emotional distress is not actionable. *See Allen v. Walker,* 569 So.2d 350 (Ala. 1990).

16. *See* U.S. Const. Art. III, § 2; Thomas J. Schoenbaum, *Admiralty and Maritime Law,* § 4–1, at 123 (1987) (Pursuant to its constitutional grant, "the federal courts have authority to develop a *substantive* body of *general maritime law* applicable to cases within the admiralty and maritime jurisdiction.").

17. The Court majority in *Gottshall* rejected the bystander test as "inappropriate [] in the FELA context." —— U.S. at ——, 114 S.Ct. at 2411. It cited two primary reasons: (1) the test was not developed until 60 years after FELA's enactment, and "therefore lacks historical support," and (2) because the test is limited by most jurisdictions to plaintiffs who witness the severe injury or death of a close family member, "it would be a rare occurrence for a [railroad] worker" to meet the standard during the course of his employment. *Id.*

and Amanda were not physically present on the cruise with their parents. Thus, they cannot state a claim for emotional distress under any of the theories outlined above.

 However, unlike her siblings, Samantha Chan was in the raft that overturned in the surf, thrusting Benny Chan onto the rocks and killing two others. Thus, Samantha Chan clearly was in the so-called "zone of danger" at the time of the incident: She was riding in the raft and could have suffered the same fate as those who died or were seriously injured. According to the Chans' complaint, Samantha Chan also suffered some physical injury as a result of the capsizing of the raft.[18] The district court therefore erred in dismissing her claim for emotional distress.

We express no opinion whether Victoria Chan has a similar claim because she has failed to allege facts that might support a claim under any of the theories. Without more facts, we cannot determine whether she has stated a claim for emotional distress. *Cf. Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1283 (1st Cir.1993). On remand, the trial court may allow amendment, if it sees fit, and further fact-finding on Victoria Chan's emotional distress claim should it survive pretrial proceedings. In the absence of full factual development and proper briefing by the parties, we decline to decide which of the three theories of recovery should be adopted under maritime law. We direct the district court to decide the issue in the first instance.

### III.

In summary, we reverse the order dismissing Benny Chan's tort claim against Society Expeditions on the ground of workers compensation immunity. We affirm the district court's ruling on service of process, and vacate and remand for further proceedings to determine whether personal jurisdiction over Discoverer Reederei GmbH existed under general agency principles or under the contract of carriage. We affirm the order dis-

missing the claims of Benny Chan's wife and children for loss of consortium damages. We also affirm the order dismissing Zachary and Amanda Chan's claims for emotional injury. However, we reverse the district court's summary judgment dismissing Samantha Chan's emotional distress claim and we remand for further review of Victoria Chan's emotional distress claim.

The judgment of the district court is, AFFIRMED IN PART, REVERSED IN PART, AND REMANDED, no party to recover costs on this appeal.

---

18. The Chans' complaint alleges that Samantha Chan suffered personal injuries, including "injuries to her body and limbs; injury to her nervous system; great mental, physical and nervous distress pain and suffering." However, the appellees contend in their brief on appeal that Samantha Chan did not sustain physical injury. This is a question of fact for the fact-finder to decide and is inappropriate for summary judgment on the present record.