Duane Lawson FAWKNER, Plaintiff,

v.

ATLANTIS SUBMARINES, INC.; Atlantis Submarines Hawaii, Inc.; Atlantis Submarines Hawaii LP; In Personam, and M/V Ocean Twin O.N. 503928 and M/V Kapena, In Rem, Defendants.

No. CIV. 00–00267 SOM–LEK.

United States District Court, D. Hawaiʻi.

Feb. 23, 2001.

Jay Lawrence Friedheim, Honolulu, HI, for plaintiff.

Gregory Lesser, Lesser & Associates, Redondo Beach, CA, for defendants.

*ORDER GRANTING IN PART AND DENYING IN PART DEFEN-DANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ORDER GRANTING IN PART AND DENY-ING IN PART DEFENDANTS' MO-TION FOR PARTIAL SUMMARY JUDGMENT*

MOLLWAY, District Judge.

## I. *INTRODUCTION.*

Plaintiff Duane Lawson Fawkner ("Fawkner") filed a First Amended Complaint against Defendants Atlantis Submarines, Inc., Atlantis Submarines Hawaii, Inc., Atlantis Submarines Hawaii LP, *in personam*, and M/V Ocean Twin O.N. 503928 and M/V Kapena, *in rem* (collectively "Atlantis") on October 27, 2000 ("First Amended Complaint"). The First Amended Complaint alleges that Fawkner was seriously injured while assisting a su-pervisor at Atlantis in moving an engine head over to a storage facility. Fawkner claims that Atlantis terminated his employment because he had been injured. Fawkner has sued Atlantis for Jones Act negligence, unseaworthiness, maintenance and cure, wrongful discharge, negligent infliction of emotional distress, and intentional infliction of emotional distress. Fawkner also seeks punitive damages based on Atlantis' conduct.

Atlantis has moved for partial summary judgment on Fawkner's wrongful discharge, negligent and intentional infliction of emotional distress, and punitive damages claims.[1] The court grants in part and denies in part Atlantis' motion for partial summary judgment, finding that: (1) Atlantis is entitled to summary judgment on the wrongful discharge claim because Atlantis was permitted by law to terminate Fawkner's employment when his contract expired by its own terms; (2) Atlantis is entitled to summary judgment on Fawkner's negligent infliction of emotional distress claim because that claim is factually unsupported; (3) Atlantis is entitled to summary judgment on Fawkner's intentional infliction of emotional distress claim to the extent the claim relates to the alleged wrongful termination, but not to the extent it relates to the maintenance claim; and (4) Atlantis is entitled to summary judgment on Fawkner's punitive damage claim.

## II. *BACKGROUND FACTS.*

On November 23, 1999, Atlantis sent Fawkner a letter offering him a maintenance assistant/deck hand position at Atlantis' Maui Maintenance Department beginning December 1, 1999. *See* Letter from Dawn Marie Takebayashi to Fawk-

---

**1.** On this motion, Atlantis does not seek summary judgment on Fawkner's claims for Jones Act negligence, unseaworthiness, or maintenance and cure.

ner, dated November 23, 1999 ("Employment Agreement"), attached as Ex. 1 to Atlantis' Concise Statement of Facts in support of its Motion for Partial Summary Judgment ("Atlantis' CSF"). The letter stated that the offered position was "for a period of three months and" would "end on February 29, 2000." *See id.* On December 7, 1999, Fawkner signed the Employment Agreement acknowledging that he accepted and agreed to its terms. *See id.*

Fawkner began work at Atlantis on December 7, 1999. *See* Declaration of Eunice Lyons ("Lyons Dec.") ¶ 2, attached to Atlantis' CSF; Deposition of Fawkner ("Fawkner Depo.") at 54–57, attached to Plaintiff's Separate and Concise Statement of Facts in Support of Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment Filed December 20, 2000 ("Fawkner's CSF"). Fawkner was assigned by Atlantis to perform maintenance work on M/V Ocean Twin O.N. 503928 and M/V Kapena. Fawkner claims that, on December 21, 2000, he was ordered to assist his supervisor at Atlantis, Dave Luckey, in moving an engine head to a storage facility. Fawkner says he injured his back in the process of moving the engine head. *See* Fawkner Depo. at 66–70.

Fawkner worked intermittently after his injury for a couple of weeks. *See id.* at 95–97, attached as Ex. 5 to Atlantis CSF. However, Fawkner re-injured his back in early February and eventually stopped working at Atlantis because of the back injury. *See id.* at 97.

Fawkner was paid his full hourly wage for the time that he actually worked at Atlantis. *See* Lyons Dec. ¶ 3. Before February 29, 2000, Fawkner was also paid maintenance wages of $22 per day plus a salary supplement equal to two-thirds of his salary for the time he was unable to work. *See id.*

On February 18, 2000, Atlantis sent Fawkner a letter reminding him that his employment with Atlantis would conclude on February 29, 2000. *See* Letter from Jim Walsh to Fawkner, dated February 18, 2000, attached as Ex. 2 to Atlantis' CSF. The letter informed Fawkner that Atlantis would still continue to pay $22 per day in maintenance wages and that Fawkner would continue to be eligible for maintenance wages and cure until he reached Maximum Medical Improvement. *See id.* The letter, however, also stated that Atlantis would discontinue the additional payments that supplemented Fawkner's Jones Act maintenance wages as of the day that Fawkner's employment was scheduled to end pursuant to the Employment Agreement, *i.e.*, February 29, 2000. *See id.*

Fawkner's employment thereafter concluded on February 29, 2000. *See* Lyons Dec. ¶ 2. Since that time, Fawkner has received maintenance in the amount of $22 per day and continues to receive these maintenance payments to the present. *See id.* ¶ 3.

On April 11, 2000, Fawkner filed a Complaint in this court against Atlantis. In that initial Complaint, Fawkner brought claims for negligence under the Jones Act, 46 U.S.C. § 688, and for unseaworthiness, maintenance, and cure under general maritime law.

Fawkner filed a First Amended Complaint on October 27, 2000, adding claims for wrongful discharge, negligent and intentional infliction of emotional distress, and punitive damages. Atlantis has now moved for partial summary judgment on Fawkner's wrongful discharge, negligent and intentional infliction of emotional distress, and punitive damages claims.

### III. *STANDARD.*

Summary judgment shall be granted when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *Id.* at 322, 106 S.Ct. 2548. The burden initially lies with the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *Id.* At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (*quoting First Nat'l Bank v. Cities Serv. Co.,* 391

U.S. 253, 290–93, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Addisu,* 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact"). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). *Accord Addisu,* 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion").

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Services,* 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## IV. *ANALYSIS.*

### A. *Wrongful Discharge.*

 In the First Amended Complaint, Fawkner asserts a claim under Hawaii law for wrongful discharge in violation of a clear mandate of public policy.[2] *See*

---

**2.** Citing *Smith v. Atlas Off-Shore Boat Service, Inc.,* 653 F.2d 1057, 1063 (5th Cir. 1981), recognizing a wrongful discharge in

violation of public policy as a federal maritime tort, Atlantis argues that federal maritime law preempts state law for Fawkner's

*Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 379–80, 652 P.2d 625, 630–31 (1982) (recognizing a cause of action in Hawaii for wrongful discharge in violation of a clear mandate of public policy). Under Hawaii law, "an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy." *Id.* at 380, 652 P.2d at 631. "In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." *Id.* "[C]ourts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject." *Id.* "[T]he plaintiff alleging a [wrongful] discharge bears the burden of proving that the discharge violates a clear mandate of public policy." *Id.*

The Employment Agreement between Atlantis and Fawkner provided that Fawkner's employment would last "for a period of three months and" would "end on February 29, 2000." *See* Employment Agreement. According to Atlantis, Fawkner was terminated pursuant to the terms of his Employment Agreement and not because he was injured on the job or for any other reason. *See* Lyons Dec. ¶ 2. Fawkner argues, however, that the Employment Agreement is ambiguous and that there is a question of fact as to how long the parties agreed Fawkner would be employed.

■ As a general rule, the construction and legal effect to be given a contract is a question of law to be resolved by the court. *See Hanagami v. China Airlines, Ltd.,* 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984). "It is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." *State Farm Fire & Casualty Co. v. Pacific Rent–All, Inc.,* 90 Hawai'i 315, 323, 978 P.2d 753, 762 (1999). Terms of a contract should be interpreted according to their plain, ordinary, and accepted use in common speech, unless the contract indicates a different meaning. *See Amfac, Inc. v. Waikiki Beachcomber Investment Co.,* 74 Haw. 85, 108–09, 839 P.2d 10, 24 (1992). "Intent becomes a question of fact only where the language of the contract is ambiguous and casts a doubt as to the intent of the parties." *Soukop v. Snyder,* 6 Haw. App. 59, 63, 709 P.2d 109, 112 (1985). "A term of a contract is ambiguous when it is capable of being reasonably understood in more ways than one." *Stewart v. Brennan,* 7 Haw.App. 136, 142, 748 P.2d 816, 821 (1988).

■ The plain and ordinary language contained within the Employment Agreement provides for the termination of Fawkner's employment on February 29, 2000. The language of the Employment Agreement is clear and unambiguous. It states that Fawkner's position with Atlantis would "end on February 29, 2000." *See* Employment Agreement. Accordingly, on February 29, 2000, Fawkner's employment with Atlantis terminated pursuant to the terms of his Employment Agreement.

Fawkner is unpersuasive in arguing that the Employment Agreement should be read as providing that the employment relationship would not end on February 29, 2000, but would continue for three months' worth of full-time work. Fawkner asserts that, because he was injured two weeks after he commenced working for

---

wrongful termination claim. This court need not decide this issue, because Fawkner cannot sustain his wrongful termination claim regardless of whether federal or Hawaii law controls.

Atlantis, he had not performed three months of full-time work as of February 29, 2000. He points out that the Employment Agreement does not address the possibility that he would be injured and unable to complete three months' worth of full-time work by February 29, 2000.

Fawkner's argument is belied by the unambiguous terms of the Employment Agreement. "The court should look no further than the four corners of the document to determine whether an ambiguity exists." *See State Farm,* 90 Hawai'i at 323, 978 P.2d at 762. "[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *Id.* Even if Fawkner understood the contract to say something it did not say, that unreasonable understanding does not create a genuine issue of material fact. Indeed, the Employment Agreement's silence as to the possibility that Fawkner would be injured supports the conclusion that the parties had no agreement at all as to the effect of an injury on Fawkner's employment and instead intended his employment to end on the date clearly stated in the agreement.

Fawkner has not submitted any evidence to demonstrate that: (1) Atlantis extended the terms of the Employment Agreement; (2) Atlantis and Fawkner entered into another contract; or (3) Atlantis continued to treat Fawkner as an employee after February 29, 2000. Absent any evidence that Atlantis extended the Employment Agreement or entered into a new contract with Fawkner, Fawkner's employment automatically terminated according to the terms of the Employment Agreement on February 29, 2000. *See* 17A Am. Jur.2d *Contracts* § 545 (2000) ("Where a contract specifies the period of its duration, it terminates on the expiration of such period").

Fawkner's allegations that, in violation of public policy, Atlantis terminated him because he was injured, *see* Fawkner Depo. at 111–13, are unsupported by evidence. Allegations alone cannot defeat a motion for summary judgment. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Atlantis is therefore awarded summary judgment on Fawkner's wrongful discharge claim.

**B. *Negligent Infliction of Emotional Distress.***

**1. *State Law NIED Claim.***

To the extent Fawkner's negligent infliction of emotional distress ("NIED") claim is premised on his state law wrongful discharge claim, the court grants summary judgment in favor of Atlantis in light of the court's ruling that Fawkner's termination was consistent with the Employment Agreement. Atlantis cannot be liable for NIED based on Fawkner's discharge because Fawkner was terminated pursuant to the terms of the Employment Agreement and not because he was injured while working for Atlantis. Moreover, under Hawaii law, "recovery for [NIED] by one not physically injured is generally permitted only when there is some physical injury to property or a person resulting from the defendant's conduct." *Ross v. Stouffer Hotel Co.,* 76 Hawai'i 454, 465, 879 P.2d 1037, 1048 (1994). Fawkner has presented no evidence of any physical injury to himself or anyone else as the result of the termination of his Employment Agreement. *See id.* (noting that, where a plaintiff has presented no evidence of physical injury to himself or another, summary judgment is appropriate on the plaintiff's NIED claim).

**2. *General Maritime Law NIED Claim.***

Fawkner argues that Atlantis not only wrongfully terminated him, it also wrong-

fully reduced the maintenance owed him under general maritime law as a seaman, causing him emotional distress. The court examines this argument under federal law because it relates to the payment of maintenance under general maritime law.

 A claim for NIED is cognizable under general maritime law. *See Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir.1994) (citing *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (holding that negligent infliction of emotional distress is cognizable under the Federal Employers' Liability Act ("FELA"))). The Ninth Circuit has not adopted a specific threshold standard that must be met by plaintiffs bringing claims for NIED under general maritime law. *See id.* at 1409. Fawkner, however, has not demonstrated that he can recover under any of the three standards recognized by the Ninth Circuit. *See id.* (declining to decide the threshold standard because plaintiffs could not recover under either the "physical impact," the "zone of danger," or the "relative bystander" tests); *see also Yballa v. Sea–Land Services, Inc.*, 919 F.Supp. 1428, 1434–36 (D.Haw.1995) (plaintiff "fails to raise a genuine issue of recovery for his claim of [NIED] under any of the three rules").

Under the "physical impact" rule, "the plaintiff may recover emotional distress damages only if he or she suffers an accompanying physical injury or contact." *Chan*, 39 F.3d at 1409. As noted above, Fawkner has presented no evidence of physical injury or contact to himself. Fawkner therefore cannot recover under this rule.

Fawkner may recover under the "zone of danger" rule even if there is no physical contact or injury, so long as he: (1) witnessed peril or harm to another; and (2) is also threatened with physical harm as a consequence of Atlantis' alleged negligence. *See id.* Fawkner has presented no factual evidence suggesting that he was threatened with physical harm or within any "zone of danger." *See Gottshall*, 512 U.S. at 558, 114 S.Ct. 2396 (claim related to work stress "plainly does not fall within the common law's conception of the 'zone of danger' "). Accordingly, Fawkner cannot recover under the "zone of danger" rule.

Under the "bystander proximity" or "relative bystander" rule, a plaintiff outside the "zone of danger" may recover if he: "(1) is physically near the scene of the accident; (2) personally observes the accident; and (3) is closely related to the victim." *Chan*, 39 F.3d at 1409. The "relative bystander" rule is inapplicable to Fawkner's allegations of NIED. Fawkner bases his NIED claim on Atlantis' alleged wrongful reduction in maintenance payments. As no accident was involved in the reduction of the maintenance payments, Fawkner cannot recover under the "relative bystander" rule.

Because Fawkner may not recover, as a matter of law, under any of the three rules recognized by the Ninth Circuit, the court grants summary judgment in favor of Atlantis on Fawkner's maintenance-related NIED claim. *See Chan*, 39 F.3d at 1409.

C. *Intentional Infliction of Emotional Distress.*

1. *State Law IIED Claim.*

 In light of the court's ruling that Fawkner's termination was consistent with the Employment Agreement, the court grants summary judgment in favor of Atlantis on Fawkner's intentional infliction of emotional distress ("IIED") claim to the extent it is premised on his state law wrongful discharge claim. Under Hawaii law, "[t]he tort of intentional infliction of emotional distress has three elements:

(1) the act must have been intentional; (2) the act must have been unreasonable; and (3) the actor should have recognized that the act was likely to result in illness." *Takaki v. Allied Machinery Corp.*, 87 Hawai'i 57, 66 n. 13, 951 P.2d 507, 516 n. 13 (1998). "Recovery for intentional infliction of emotional distress is permitted only if the alleged tortfeasor's acts were 'unreasonable.'" *Ross*, 76 Hawai'i at 465, 879 P.2d at 1048. An act is unreasonable if it is without just cause or excuse and beyond all bounds of decency. *Id.*

Fawkner points to no evidence in the record indicating that the manner in which Atlantis discharged Fawkner, or its motivation for doing so, was unreasonable. As noted above, Fawkner was terminated because his Employment Agreement with Atlantis expired. Fawkner has presented no evidence suggesting that Atlantis discharged him for any other reason.

### 2. *General Maritime Law IIED Claim.*

■ To the extent that Fawkner seeks to recover under general maritime law for IIED relating to Atlantis' alleged wrongful reduction of the maintenance owed to Fawkner, the court finds that a question of fact precludes summary judgment. Neither the Supreme Court nor the Ninth Circuit has decided whether a claim of IIED is cognizable under general maritime law.[3] However, the Supreme Court in *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 568, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), and *Gottshall*, and the Ninth Circuit in *Chan* left open the possibility of recovery under general maritime law for IIED.

The plaintiff in *Buell* filed a FELA complaint alleging that his employer railroad had condoned his harassment by fellow employees, causing him to suffer an emotional breakdown. *Buell*, 480 U.S. at 559–60, 107 S.Ct. 1410. In response to the defendant's argument that almost every employee could bring a claim for emotional injury if NIED or IIED claims were allowed under FELA, the Supreme Court recognized that a significant percentage of employees bringing claims of emotional injury would not be able to meet the prerequisite of having suffered severe emotional injury as the result of "unconscionable abuse" or "outrageous conduct" as defined in Restatement (Second) of Torts § 46 (1965).[4] *Buell*, 480 U.S. at 567 n. 13, 107 S.Ct. 1410. The court also noted that, "in the spirit of broad construction, the FELA has been construed to cover some intentional torts even though its text only mentions negligence." *Id.* at 562 n. 8, 107

3. The court refers to case law developed under the Jones Act and FELA to guide its analysis in this case under general maritime law. *See Chan*, 39 F.3d at 1407 ("we look to case law developed under the Jones Act [and FELA] in guiding the development of the general maritime law").

4. In explaining the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable, the Restatement (Second) of Torts states:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 comment d.

S.Ct. 1410. However, the Supreme Court declined to decide whether a purely emotional injury is actionable under FELA. *Id.* at 568, 107 S.Ct. 1410.

The Supreme Court, in *Gottshall,* later decided that FELA allows recovery for NIED. In analyzing the scope of FELA, the Court declared that common law principles are entitled to "great weight," and that "common law principles must play a significant role" in a judicial decision. *Gottshall,* 512 U.S. at 544, 114 S.Ct. 2396. The Court found persuasive the nearly universal recognition of NIED among the states. *Id.* at 550, 114 S.Ct. 2396. The Court also saw "no reason why emotional injury should not be held to be encompassed within [FELA], especially given that severe emotional injuries can be just as debilitating as physical injuries." *Id.* Although recognizing a claim under FELA for NIED, the court declined to decide whether IIED was cognizable under FELA. *Id.* at 541 n. 2, 114 S.Ct. 2396 (stating that "[w]e are not concerned here with the separate tort of intentional infliction of emotional distress").

The Ninth Circuit, in *Chan,* considered the Supreme Court's analysis in *Gottshall* under FELA and held that a claim for NIED was also cognizable under general maritime law. *See Chan,* 39 F.3d at 1409. Although *Chan* only dealt with NIED, the Ninth Circuit seemed to hold generally that "claims for emotional distress are cognizable under admiralty law." *Id.* (finding persuasive the observation in *Gottshall* that NIED "is nearly universally recognized among the States today"); *see also Yballa,* 919 F.Supp. at 1436–37 (recognizing that the Ninth Circuit in *Chan* seemed to imply that an IIED claim under general maritime law was cognizable).

The Supreme Court noted in *Buell* that "most States now recognize a tort of intentional infliction of emotional distress."

*Buell,* 480 U.S. at 568, 107 S.Ct. 1410. Accordingly, consistent with the Ninth Circuit's general ruling in *Chan* that "claims for emotional distress are cognizable under admiralty law," the court finds that Fawkner's IIED claim may be brought under general maritime law. *See Teague v. Nat'l R.R. Passenger Corp.,* 708 F.Supp. 1344, 1351 (D.Mass.1989) (IIED claim can be brought by plaintiff under FELA); *Kraus v. Consolidated Rail Corp.,* 723 F.Supp. 1073, 1088 (E.D.Pa.1989) (same; citing *Teague* ), *appeal dismissed on other grounds,* 899 F.2d 1360 (1990).

Atlantis has not demonstrated that there is no genuine issue of fact as to whether Fawkner suffered "severe emotional injury," or was subject to the "unconscionable abuse" or "extreme and outrageous conduct" necessary to support a claim for IIED under general maritime law. Specifically, there is a genuine issue of fact as to whether Atlantis' reduction of Fawkner's payments constitutes "extreme and outrageous conduct" or "unconscionable abuse." Accordingly, the court denies summary judgment on Fawkner's IIED claim to the extent that Fawkner seeks to recover under general maritime law for IIED relating to Atlantis' allegedly wrongful reduction of payments to Fawkner.

### D. *Punitive Damages.*

Fawkner seeks punitive damages under only his state law wrongful termination and negligent and intentional infliction of emotional distress claims. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment filed December 20, 2000, at 8. Because the court awards summary judgment in favor of Atlantis on the state law claims, the court grants Atlantis' motion for partial summary judgment on Fawkner's punitive damages claim.

## V. *CONCLUSION.*

The court grants in part and denies in part Atlantis' motion for partial summary judgment. Atlantis is entitled to summary judgment: (1) on the wrongful discharge claim because Atlantis was permitted by law to terminate Fawkner's employment when his contract expired by its own terms; (2) on the negligent infliction of emotional distress claim because that claim is factually unsupported; (3) on the intentional infliction of emotional distress claim under state law to the extent the claim relates to the alleged wrongful termination; and (4) on the punitive damage claim. The court denies summary judgment on Fawkner's intentional infliction of emotional distress claim under general maritime law to the extent the claim relates to Fawkner's maintenance claim.

This order leaves for future adjudication Fawkner's claims for Jones Act negligence, unseaworthiness, maintenance and cure, and intentional infliction of emotional distress under general maritime law to the extent the claim relates to the maintenance claim.

IT IS SO ORDERED.