Argued and submitted April 12, reversed in part; otherwise affirmed and remanded for entry of amended judgement November 15, 1995, petition for review denied April 30, 1996 (323 Or 153)

# COMPUTER CONCEPTS, INC.,

Profit Sharing Plan; and Computer Concepts, Inc.,
Pension Plan, succeeded in interest by Don Weidenweber,
Self-Directed Individual Retirement Account,
by and through its custodian,
Piper Jaffray & Hopwood, Incorporated,
*Respondents,*

*v.*

William D. BRANDT,
Marc McDevitt and Cynthia L. Barrett,
Personal Representative of the
Estate of Peter C. Murphy, Sr.,
aka Peter Connacher Murphy, Deceased,
*Appellants,*

*and*

McDevitt & Company Investment Corporation;
Paragon, Inc.,
an Oregon corporation;
American Insurance Company,
and John Does 1-6,
*Defendants.*

(A8612-07746; CA A74597)

905 P2d 1177

Don G. Carter argued the cause for appellant William D. Brandt. With him on the briefs were Janice M. Stewart, Jonathan M. Radmacher and McEwen, Gisvold, Rankin & Stewart.

David R. Nepom argued the cause and filed the briefs for appellant Marc McDevitt.

John R. Faust, Jr., argued the cause for appellant Cynthia L. Barrett. With him on the briefs was Schwabe, Williamson & Wyatt.

Richard S. Yugler and Robert J. McGaughey argued the cause for respondents. With them on the brief were Law Office of Richard S. Yugler and McGaughey & Georgeff.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Defendants Brandt, McDevitt and Peter Murphy, Sr. (Murphy),[1] appearing separately, appeal from the judgments against them in this action under the Oregon Securities Law, ORS chapter 59, and the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO). ORS 166.715 to 166.735. We reverse in part as to Murphy, and affirm in all other respects.

In a previous appeal, the Oregon Supreme Court reversed and remanded the trial court's summary judgment for defendants on the securities law claims and its concomitant dismissal of the ORICO claims. *Computer Concepts, Inc. v. Brandt*, 310 Or 706, 801 P2d 800 (1990). The facts stated in that opinion provide an adequate overview for an understanding of the present one:

"On February 12, 1985, plaintiffs entered into an agreement with Michael T. Murphy and Michael T. Murphy Productions (MMP) for the financing of a proposed movie. Under the agreement, plaintiffs would lend $200,000 to Murphy and MMP, who agreed to repay that amount, plus interest at the prime rate plus two percent, in 90 days. As security for the loan, Murphy and MMP agreed to assign all of their 'right, title and interest' in certain real property in Portland.

"* * * * *

"The movie was never made. Murphy and MMP did not repay the principal or interest on the loan. In 1985, plaintiffs obtained a confession of judgment from Murphy and MMP for $285,000. Later, plaintiffs obtained a judgment for that amount, which they were unable to collect. They then sued the present defendants, all of whom were involved in the movie transaction." 310 Or at 709-11.

The Supreme Court addressed several issues in arriving at its disposition. The principal issue, which the court answered affirmatively, was whether the transactions

---

[1] During the course of the proceedings, Murphy died, and the personal representative of his estate has been substituted as the appellant. For ease of reference, we will nevertheless designate the party in this opinion as Murphy.

Murphy was the father of Michael Murphy who was among those principally involved in the alleged fraudulent activities. When referring to Michael Murphy, we will use his full name.

involved the sale of a "security" subject to ORS chapter 59. Of the other issues, only one requires description here. The ORICO claims were based on plaintiffs' theory that defendants' underlying violations of the securities laws, in the form of fraud in and the sale of unregistered securities, were "predicate offenses" for purposes of ORICO liability. Defendants argued that, because none of them had been *convicted* of securities law violations, plaintiffs were foreclosed as a matter of law from pursuing that theory as a basis for ORICO liability. The court rejected that argument, explaining that *former* ORS 166.715(5) (now codified as ORS 166.715(6)), the pertinent ORICO provision, "requires a plaintiff to prove only that the defendant engaged in all of the elements of a listed crime, but not that the defendant was convicted." *Id.* at 717.

After the Supreme Court's remand, the case was tried to a jury. It found, *inter alia*, that Murphy and McDevitt were liable on both the securities law and ORICO claims, and that Brandt was liable under the securities law. The jury also found that Murphy was liable on an "alter ego" theory, in connection with the corporation's involvement in the transactions.

Although the three defendants appear separately, they join in many of one another's arguments. In the main, their arguments are without merit and call for no discussion. There are two exceptions. First, Murphy's argument that the court erred by denying his motion for a directed verdict is, in part, correct. Second, McDevitt's arguments, in which the other appealing defendants join, require brief comment for a very different reason. They include numerous unwarranted assaults on the neutrality of the trial judge and the conduct of opposing counsel. The arguments do not demonstrate error, and we regard them as inappropriate.

Before turning to Murphy's contentions, we set out the relevant statutes on which his arguments turn. ORS 59.115 provides, as material:

"(1)   A person who sells a security is liable as provided in subsection (2) of this section to a purchaser of the security if the person:

"(a)   Sells a security in violation of the Oregon Securities Law or of any condition, limitation or restriction imposed

upon a registration or license under the Oregon Securities Law; or

"(b)    Sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know and in the exercise of reasonable care could not have known, of the untruth or omission.

"(2)    The purchaser may recover, in addition to costs and reasonable attorney fees at trial and on appeal:

"(a)    Upon tender of the security, the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments and decrees for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security; or

"(b)    If the purchaser no longer owns the security, damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of interest specified in ORS 82.010 for judgments and decrees for the payment of money from the date of disposition.

"(3)    Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with that person."

ORS 59.015(2) defines "control," for purposes of the Oregon Securities Law, to mean

"the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."

Three ORICO provisions are germane. The first, ORS 166.720(3), provides:

"It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of any unlawful debt."[2]

ORS 166.715(4) and (6)(a)(A) provide:

"(4) 'Pattern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents; provided at least one of such incidents occurred after November 1, 1981, and that the last of such incidents occurred within five years after a prior incident of racketeering activity.

"* * * * *

"(6) 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

"(a) Any conduct that constitutes a crime, as defined in ORS 161.515, under any of the following provisions of the Oregon Revised Statutes:

"(A) ORS chapter 59, relating to securities * * *[.]'"

Plaintiffs' theory of securities law liability against Murphy is that he was a "control person," within the meaning of ORS 59.015(2), and subject to liability under ORS 59.115(3). There was no evidence that Murphy himself was a "seller" in the unlawful transactions, or that he was otherwise directly involved in them. Rather, plaintiffs' proof showed, and the jury found, that he was a person having "control" over the sellers. Under plaintiffs' evidence, Murphy's involvement in the enterprise consisted primarily of providing funding to his son and, from time to time, conversing and dealing with his son about the latter's and the corporation's affairs. Murphy interjected the affirmative

---

[2] At various places in their brief, plaintiffs acknowledge that their ORICO case against Murphy was premised only on ORS 166.720(3). They contend, nevertheless, that they also produced evidence to support liability under subsections (1) and (2) of that statute. Assuming that that contention may be considered, we agree with Murphy that there was no such evidence.

defense available to him under ORS 59.115(3) that he was a nonseller who did not and could not know in the exercise of reasonable care "of the existence of the facts on which the liability" of Michael Murphy and the other sellers was based. The jury rejected the defense.

Plaintiff's ORICO theory against Murphy was that his involvement in the securities law violations constituted the requisite predicate offenses for a finding of racketeering activity under ORS 166.715(6)(a)(A) and of the facts necessary for liability under ORS 166.720(3).

■ Murphy moved for a directed verdict on all of the claims against him.[3] He argues that the court erred by denying the motion in each particular. Murphy asserts that the evidence did not support the finding that he was a control person for purposes of liability under ORS 59.115(3). According to him, control person liability requires proof that the person "actually exercised control over the operations of the corporation in general and had power to control the specific transaction upon which liability is based." We agree that there was no such proof here, but we do not agree that Oregon law requires proof of that much to establish control person liability. In *Ince v. AMEV Investors, Inc.*, 122 Or App 66, 69, 857 P2d 165 (1993), *rev den* 318 Or 350 (1994), we defined the test as whether the person had the "power of control." There was evidence here that Murphy had that power, although none that he exercised it, at least in connection with the offending transactions. The evidence was sufficient to support the finding of control person liability under the securities laws.[4]

■ Murphy argues next that the court erred by denying a directed verdict on the ORICO claim against him. His argument on this point is roughly 120 degrees removed from his argument on the securities law claim: There, his position

---

[3] We reject plaintiffs' contention that the arguments Murphy makes to us were not adequately preserved, and no discussion of the contention is necessary.

[4] That conclusion renders academic Murphy's challenges to the submission of and finding on the "alter ego" theory. The legal premises of "control person" liability are necessarily subsumed within the "alter ego" theory, and the finding of control person liability apparently accounts independently for the actual damages awarded against Murphy. The same is not true of the ORICO claim, because the damages on it were trebled. ORS 166.725(7).

was that control person status cannot be found in the absence of actual and exercised dominance while, here, he appears to begin with the view that control person status is not enough in itself to support ORICO liability, however dominant the controlling entity may be. Be that as it may, we agree that there was no evidence to support the finding of ORICO liability against Murphy.

ORS chapter 59 makes certain acts "unlawful," *e.g.*, selling unregistered securities, ORS 59.055, and employing fraud in the sale of securities. ORS 59.135. ORS 59.991 enumerates and makes it a criminal offense to violate certain specified sections in ORS chapter 59, including ORS 59.005 to 59.451. Murphy begins with the unspoken premise that ORS 59.991 is mechanically incapable of a literal application, because some of the enumerated sections relate to matters that *cannot* constitute criminal conduct or give rise to criminal accountability. To select two of many possible examples, ORS 59.005 simply sets forth the short title of the act, and ORS 59.370 *limits* civil and criminal liability for certain good faith acts and omissions.

Murphy reasons that ORS 59.115 comes within that category of provisions that cannot entail criminal offenses, because it relates by its terms only to civil liability. More fundamentally, "control person" liability under ORS 59.115(3), unlike a seller's potential liability under subsection (1), is not even based on conduct related to an unlawful securities transaction but is, instead, based on a status and a relationship to the seller that, in itself, is completely nonculpable.

Murphy's argument continues that, because there was no showing that he committed any crimes under the securities laws, he cannot be liable under ORICO. ORS 166.720(3) proscribes only activities in which a person engages through a pattern of racketeering activity, and ORS 166.715(6)(a) defines "racketeering activity" as encompassing only "conduct that constitutes a crime."

We agree with Murphy's legal analysis and with his understanding that, given that analysis, there was no evidence on which the finding of ORICO liability against him could be based. The ORICO statutes are plain enough on their

face and are to the effect, as Murphy argues, that actual participation in crimes is a prerequisite to a person's liability. Beyond that, however, the Supreme Court held in *Computer Concepts* that those statutes require proof that "the defendant engaged in all the elements of a listed crime." In addition to the fact that that court's interpretations are deemed to be integrated into the statutes they interpret, in the present setting the interpretation is also the law of the case.

The question, then, is whether securities law liability that is based solely on control person status under ORS 59.115(3) can constitute a crime under ORS chapter 59, and thus serve as a predicate offense for purposes of ORICO liability. Murphy correctly argues that it cannot. The text and context of the statute are decisive. ORS 59.115(3) does not purport to deal with anything other than civil liability that, as to "control persons," is based on a status, not an involvement or participation in unlawful activity. Subsection (3) differs in those respects from subsection (1), which pertains to the liability of sellers and which bases their liability on specific conduct that is made unlawful by other provisions of the Oregon Securities Law. A control person's liability under ORS 59.115(3) is dependent on and derivative from the liability of a seller. The status of "control person" imports no actual participation in the seller's unlawful conduct and its proof requires no evidence of actual involvement in that conduct. *Ince*; *see also Badger v. Paulson Investment Co., Inc.*, 311 Or 14, 30 n 11, 803 P2d 1178 (1991) (control person liability based on "power to direct" rationale insufficient to support an award of punitive damages). Finally, the statute makes the relative extent and nature of a control person's accountability clear by providing that he is entitled to contribution from the culpable sellers and others with whom he is found jointly and severally liable. We conclude that proof of control person liability under ORS 59.115(3) is insufficient to prove a securities law crime or to support a claim for ORICO liability.[5]

---

[5] We emphasize that our comments relate only to control person liability under ORS 59.115(3). We decide nothing here about other statuses or conduct that might be a basis for liability under that subsection. We also do not imply that a control person cannot *simultaneously* be engaged in other ways, including involvement in the unlawful transactions, with the seller he has the power to control. However, there was no proof that Murphy was so engaged here.

Plaintiffs rely on a number of cases of the Oregon Supreme Court and this court relating to the securities laws, ORICO or both. However, those cases are not analogous to this one: none deals with the potential liability under ORICO of a person whose only "predicate" involvement is control person status under the securities laws, and none in any way suggests an answer to that question that differs from the one that we have given.

Plaintiffs also argue, in effect, that they *could* have succeeded on their ORS 59.115(3) claim against Murphy on the lesser showing that we have held was sufficient to establish that claim; but, according to them, they also proved direct involvement of a degree sufficient to support a finding that he was guilty of criminal offenses under the securities laws. We disagree. In each instance to which they point, their argument circles back to the proposition that Murphy was a control person, and had the *ability* (and possibly the opportunity) to become directly involved in the unlawful activities. There was no proof and no permissible inference that he in fact did so.

Insofar as plaintiffs premise their arguments on the jury's rejection of Murphy's affirmative defense that he did not and could not reasonably have known about the facts giving rise to the other participants' liability, they fail for two reasons. First, Murphy's failure to carry his burden on that defense does not suffice as proof of the converse by plaintiffs. Second, and more fundamentally, the facts that he did not prove to the jury's satisfaction are not the converse of the fact that had to be established for plaintiffs' ORICO claim against him to succeed, *i.e.*, that he was an actual participant in the unlawful activities rather than simply that he knew or should have known about them. The court erred by denying a partial directed verdict for Murphy on the ORICO claim.[6]

Judgment on ORICO claim against Peter C. Murphy, Sr., reversed; otherwise affirmed as to each appellant; remanded for entry of an amended judgment not inconsistent with this opinion.

---

[6] Our disposition may affect the trial court's award of costs and attorney fees in connection with Murphy. In other respects, however, defendants' arguments about those matters are among the ones that we reject without discussion.