Argued and submitted December 11, 1995, reversed and remanded July 3, 1996

Winnifred M. CASTLE,
*Appellant,*

*v.*

Mark A. RITACCO,
James A. Ritacco, Michael E. Smith,
Edward O. (Ed) Fiskland, Rhonda Fiskland,
Immcon, Inc.,
a Washington corporation,
Laney & Company,
a Washington corporation,
Lloyd Panky, R/J Tax & Financial Services, Inc.,
an Oregon corporation,
Churchill Companies, Inc.,
a Washington corporation,
Tarlton Gosney, Cliff Tadema,
The American Insurance Company
and John Does 1-10,
*Defendants,*

*and*

ANDOVER SECURITIES,
a Missouri corporation,
*Respondent.*

(933591; CA A87150)

919 P2d 1196

J. Michael Alexander argued the cause for appellant. With him on the briefs was Burt Swanson Lathen Alexander McCann & Smith, P.C.

Thomas D. D'Amore argued the cause for respondent. On the brief were Jeffrey L. Olson and Tollefsen & Company, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

*Plaintiff* appeals from a summary judgment in favor of defendant Andover Securities (Andover)[1] in this action for damages arising from the sale of unregistered securities. We reverse and remand.

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 139 Or App 244, 248, 911 P2d 1243, *rev allowed* 323 Or 483 (1996).

The following facts are not disputed. Before October 1992, James Ritacco and his brother Mark were securities representatives for Laney & Company (Laney). For several years before 1992, James Ritacco prepared plaintiff's tax returns and advised plaintiff regarding "tax matters." Sometime before 1992, James Ritacco suggested that plaintiff transfer her Putnam mutual fund account to him and to R/J Tax & Financial Services, Inc. James Ritacco also suggested that plaintiff deposit $10,000 into her Putnam account. In August 1992, James or Mark Ritacco told plaintiff about an investment opportunity with Immcon, Inc. (Immcon), a Washington corporation, that would involve her loaning Immcon funds that would provide Immcon with short-term financing for a debenture offering. On August 21, 1992, James Ritacco mailed a letter to Putnam requesting that a check drafted by plaintiff in the sum of $10,000 be deposited into plaintiff's account. On October 5, 1992, James or Mark Ritacco prepared, and on October 6, 1992, plaintiff signed, a letter authorizing Putnam to liquidate $37,000 from her account and to wire that money to a bank account held by Immcon. That letter advised Putnam to "receive instructions from my representative, Mark Ritacco, at [telephone number]."

On October 6, 1992, James Ritacco resigned from Laney. The following day, he began working at Andover, under the supervision of Kent Miller, Andover's compliance

---

[1] Although several defendants are named in plaintiff's Third Amended Complaint, Andover is the only defendant that is a party to this appeal.

officer. At that time, James Ritacco's securities license was transferred to Andover. James Ritacco worked for Andover until his resignation on August 27, 1993.

On October 19, 1992, Andover mailed to the Oregon Division of Finance and Corporate Securities an application for registration of convertible debentures to be offered to permitted Oregon purchasers. That application names Andover as the "broker-dealer," lists Kent Miller as the president of Andover and names Immcon as the "issuer."

After a conversation with James Ritacco, plaintiff purchased, on October 28, 1992, a promissory note issued by the president of Immcon, Michael Smith, that required Smith to pay plaintiff $35,000. That promissory note was guaranteed by Michael Smith and the Fisklands and was to provide short-term bridge financing for the debenture offering. Andover did not know of the sale of the Immcon and Smith promissory notes until late November 1992, when mutual fund customer accounts were transferred from Laney to Andover. At that time, Kent Miller became aware that plaintiff was a new customer of Andover. Andover never received consideration for plaintiff's loans to Immcon or Smith. No proceeds or loans by plaintiff to Immcon and Smith were ever deposited in Andover accounts.

The notes went into default, and, on August 9, 1993, plaintiff filed a complaint alleging that Andover, James and Mark Ritacco, Laney and others had been involved in the sale of unregistered securities. Plaintiff alleged that Andover was liable by, among other things, "aiding, abetting and assisting" James Ritacco in the sales of the unregistered securities. Andover answered, denying that the Immcon and Smith notes were unregistered, denying that James Ritacco was employed by Andover at "all material times," and denying several allegations regarding representations purportedly made by James and Mark Ritacco and the nature of the promissory notes. Andover also alleged, as affirmative defenses, that the notes were "exempt securities" and that it lacked knowledge of the facts underlying the transactions at issue.

Andover moved for summary judgment, arguing that the undisputed facts establish that, because James

Ritacco did not have actual, implied or apparent authority to act on behalf of Andover, it is not vicariously liable for his acts on the basis of common law principles of agency and *respondeat superior*.

Plaintiff argued that common-law principles of agency and *respondeat superior* were beside the point:

> "The general issue of material fact to be resolved at trial in this case is whether Andover Securities is a person who directly or indirectly controls a seller under [ORS 59.115(3)] or who participated or materially aided in the sale."

Plaintiff further argued:

> "There is a second aspect of ORS 59.115(3) which holds '* * * and every person who **participates or materially aids** in the sale is also liable jointly and severally with and to the same extent as the seller * * *.'"

(Boldface plaintiff's.) Plaintiff contended that there is a question of fact as to whether Andover "materially aided in the sale of these securities by James Ritacco and or directly or indirectly controlled the seller." In support of that contention, plaintiff relied on the facts that Andover was listed as the broker in the registration application and that James Ritacco was Andover's registered representative at the time of the transactions at issue.

The trial court granted Andover's motion for summary judgment, explaining:

> "There is no evidence of actual authority. There is no evidence of implied authority. The only basis upon which [plaintiff] can hold Andover liable is under a theory of apparent authority. Putting it succinctly as I can, there is nothing in the record before this court which establishes that Andover conducted itself such that it caused [plaintiff] to believe that Andover consented to having Jim Ritacco act for Andover in making either of the two loans.
>
> "* * * * *
>
> "[W]hen a Plaintiff seeks to hold the broker liable as a seller, there must be facts supporting the proposition that the representative had some 'authority' which would in the end, legally bind the principal. That is absent in this case."

The trial court then entered judgment in favor of Andover. On appeal, plaintiff assigns error to the decision to grant Andover's motion for summary judgment.

Plaintiff argues that, although the trial court may have been correct as to any portions of her claim founded on common law principles of agency and *respondeat superior*, the court erred in failing to recognize that Andover nevertheless could be liable under ORS 59.115(3), which does not depend on proof of actual, implied or apparent authority. According to plaintiff, it is undisputed that, at the time that the Immcon and Smith notes were sold to plaintiff, Andover was supervising James Ritacco and that he was licensed to deal in securities through Andover. That, argues plaintiff, constituted "direct or indirect control" sufficient to give rise to liability under ORS 59.115(3). Plaintiff further argues that, because James Ritacco's ability to deal lawfully in securities was only by virtue of his employment with Andover, Andover "participated and aided Mr. Ritacco" in the sales at issue.

Andover responds that, under *Badger v. Paulson Investment Co., Inc.*, 311 Or 14, 803 P2d 1178 (1991), it is necessary to prove actual, implied or apparent authority to establish liability under ORS 59.115(3). In any event, it argues, there is no evidence that Andover actually participated or aided in the sale of the two loans. The fact that it employed James Ritacco at the time, it contends, is insufficient as a matter of law.

Under ORS 59.115(1) and (2), a person who sells an unregistered security is liable for the consideration paid for the security,[2] plus interest. ORS 59.115(3) provides:

> "*Every person who directly or indirectly controls* a seller liable under subsection (1) of this section, every partner, limited liability company manager, including a member who is a manager, officer or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and

[2] Because neither party raised the issue, we do not address whether the transactions involved "securities." *See* ORS 59.015(17)(a); *Computer Concepts, Inc. v. Brandt*, 310 Or 706, 711-14, 801 P2d 800 (1990); *McDonough v. Jones*, 48 Or App 785, 789, 617 P2d 948 (1980), *rev den* 290 Or 519 (1981).

to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with that person."

(Emphasis supplied.) Under that statute, "every person" is liable to the same extent as a seller of unregistered securities if he or she either "controls" the seller, "participates" in the sale or "materially aids" the sale. For the purposes of the Oregon Securities Law, "control" means

"the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."

ORS 59.015(2). As that language makes clear, "[t]he *power* to control, whether or not the power is exercised, is the crucial factor" in determining whether a person controls a seller. *Badger v. Paulson Investment Co., Inc.*, 98 Or App 200, 206, 779 P2d 1046, *mod* 100 Or App 12, 784 P2d 125 (1989), *aff'd in part and rev'd in part*, 311 Or 14, 803 P2d 1178 (1991); *Computer Concepts, Inc. v. Brandt*, 137 Or App 572, 579, 905 P2d 1177 (1995), *rev den* 323 Or 153 (1996) (emphasis in original).

■■ Evidence that a seller is a registered representative of an investment company and that the seller is licensed only through that company is sufficient to create a question of fact as to whether the company has the power to control the seller's transactions and is, therefore, liable under ORS 59.115(3). Our decision in *Ince v. AMEV Investors, Inc.*, 122 Or App 66, 857 P2d 165 (1993), *rev den* 318 Or 350 (1994), is on point. In that case, the defendant Kaneen was licensed to sell securities through the defendant AMEV, a broker-dealer. The investor sued Kaneen and AMEV, alleging, among other things, that AMEV was liable under ORS 59.115(3) for Kaneen's sales of unregistered securities. AMEV moved for, and obtained, summary judgment on the ground that there was no evidence that AMEV had actually participated in the sale of the securities. We reversed, holding that evidence that

Kaneen was a registered salesperson who sold exclusively through AMEV was sufficient to raise a genuine issue of material fact as to whether AMEV had the power to control Kaneen. *Ince*, 122 Or App at 68-69.

The same holds true in this case, in which plaintiff has produced evidence that, at the time the Immcon and Smith notes were sold to plaintiff, James Ritacco was licensed to sell securities through Andover and no one else. Plaintiff has shown the existence of a genuine issue of material fact as to whether Andover had the power to control James Ritacco when he sold the notes to plaintiff.

The Supreme Court's decision in *Badger* is not to the contrary. The court held only that proof of actual, implied or apparent authority may be *sufficient* to establish liability against nonsellers under ORS 59.115(1). *Badger*, 311 Or at 23. The court did not hold that proof of such authority is *required* to establish liability under that statute. The court did not even address the liability of controlling persons under ORS 59.115(3). Indeed, the court expressly noted that its opinion did not reach that issue. *Badger*, 311 Or at 17 n 3, 27 n 10, 29 n 11.

We conclude that the trial court erred in granting Andover's motion for summary judgment.

Reversed and remanded.