James R. MANN, M.D., Attorney–in–Fact for Jean Mann; Susan P. Mann; Crane Mills, a California corporation; Joseph Mangan; Paul R. Farago, as trustee of the Paul R. Farago Trust; the Laura D. Wanser Foundation, Inc., an Oregon non-profit corporation; U.S. Bank, N.A., a federally chartered banking institution, as trustee for the Reliable Credit Association, Inc., Profit Sharing Trust, Plaintiffs,

v.

William C. ST. LAURENT; Georges C. St. Laurent, Jr.; Atlas Pearlman, P.A., a law firm organized as a Florida for-profit corporation; Adam J. Reiss; Joel D. Mayersohn; H.R. Shepherd; William Robin Blackhurst; Francisco Suarez, aka Francisco Suarez Warden; and Edward A. Kelly, Defendants.

No. CIV.01–1008–HA.

United States District Court, D. Oregon.

June 5, 2002.

## OPINION AND ORDER

HAGGERTY, District Judge.

The plaintiffs allege several Oregon Securities Law violations against all defendants as well as common law fraud and civil conspiracy claims against William St. Laurent and Georges St. Laurent, Jr.[1] Presently before the court is defendant Georges St. Laurent, Jr.'s motion (# 30) to dismiss for failure to state a claim; defendant Edward Kelly's motion (# 40) to dismiss for failure to state a claim;[2] and defendants Atlas Pearlman, Joel Mayersohn and Adam Reiss' motion (# 48) to dismiss for lack of personal jurisdiction.

### BACKGROUND

The plaintiffs have alleged that the St. Laurent defendants sold the plaintiffs' asset-backed collateralized notes (the TAC Notes) in December, 1998. These notes were issued by an affiliate of Vitech America, which was a Florida corporation.[3] William St. Laurent was CEO of Vitech and Georges St. Laurent, Jr. owned between 15% and 40% of all Vitech stock. According to the plaintiffs, both were active in promoting the TAC notes and selling them to the plaintiffs.

Approximately a year after the sale of the TAC Notes, the St. Laurents again solicited the plaintiffs, and again the plaintiffs invested. The second investments were 9% debentures which the defendants transferred to the plaintiffs in exchange for the TAC Notes by means of individual Exchange Agreements. Although the debentures and the Exchange Agreements were effective March 1, 2001,[4] it appears that Susan Mann executed two of the Exchange Agreements on December 20, 2000, and Paul Farago signed his Exchange Agreement on January 8, 2001.

The plaintiffs employed a broker, David Mann, to attend to the details of the debenture purchase and to be their primary correspondent with the defendants. The broker met twice in Oregon with Edward Kelly, who at all times lived in Florida and was the Chief Financial Officer for Vitech. Kelly also conferred with David Mann through a series of at least a dozen telephone calls.

David Mann also conferred extensively with Adam Reiss and Joel Mayersohn, attorneys at the firm of Atlas Pearlman.

---

1.  , St. Laurent, Jr. is the father of William St. Laurent.

2.  Kelly's motion initially included a motion to dismiss for lack of personal jurisdiction, but he withdrew that part of his motion in his reply memorandum (See document # 47, page 2).

3.  Vitech was a computer manufacturer/supplier which apparently supplied components for Gateway. Vitech had at least one factory in Brazil.

4.  All seven of the debentures appear to be identical except for the amounts of the transactions. The Exchange Agreements also appear to be identical except for the amounts of the transactions. The total amount of debentures is approximately 2.4 million dollars.

Atlas Pearlman, a Florida corporation, had represented Vitech since the time of its IPO in 1996. It appears that Reiss and Mayersohn were responsible for preparing the documents for the debenture transactions, although there is evidence that Kelly also helped with that task. Both attorneys are domiciled in Florida, and the law firm was solicited in Florida by Vitech to perform legal services. The attorneys did not visit Oregon and the law firm does not do business in Oregon. The law firm apparently also acted as the escrow agent for the debenture transaction.

Vitech has filed for bankruptcy, and is unable to fulfill its obligation to pay the debentures. The plaintiffs, collectively, are facing losses on their investments in the amount of approximately $2.4 million.

The basis for this lawsuit is the allegation that William St. Laurent made false representations and omitted material facts both in connection with the TAC notes and the debentures. William St. Laurent allegedly represented to the plaintiffs that ownership of the debentures would " 'better their position' by moving the plaintiffs from the non-performing TAC notes to debentures to be issued by Vitech," and that the debentures would provide "prompt, punctual" payment. However, at the time of his promotion of the debentures, the plaintiffs allege that William St. Laurent failed to disclose the following:

1) That Gateway refused to allow an export/import loan to be funded in favor of Vitech in January 2001;

2) That the Vitech factory in Brazil burned down in January 2001 and there were serious problems (failure of insurance claim) with getting production re-started; [5]

3) That the relationship between Vitech and Gateway was deteriorating, and

that the deterioration was evidenced by:

a) Vitech defaulting on its January 10, 2001, interest payment of $792,222 to Gateway pursuant to a 1999 agreement;

b) Vitech failing to conform to material terms of the 1999 Gateway agreement; and,

c) Vitech defaulting on a $227,500 interest payment to Gateway pursuant to a 2000 Gateway agreement.

The plaintiffs have submitted copies of e-mail correspondence between David Mann and Adam Reiss. The fire is mentioned in a mid-January 2001 e-mail, as well as the Board of Director's hesitation to close the debenture sale due to the company's cash flow problem. However, the e-mails were concerned almost exclusively with obtaining correct mailing addresses for the individual plaintiffs and responding to David Mann's request for updates about when the exchange of securities would be finalized.

The plaintiffs allege that defendants Kelly, Atlas Pearlman, Mayersohn, Reiss, and Georges St. Laurent, Jr. all participated or materially aided in the sale of the debentures. The plaintiffs also appear to allege that Georges St. Laurent, Jr. knew all of the details of Vitech's dire financial condition and actively promoted the sale of the TAC notes and the debentures without disclosing material financial information to the plaintiffs.

## DISCUSSION

### 1. Personal Jurisdiction over Reiss, Mayersohn, and Atlas Pearlman

The plaintiffs have invoked federal court jurisdiction and have the burden of estab-

---

**5.** It should be noted that the facts underlying several of these alleged omissions occurred

after at least two of the plaintiffs signed their exchange agreements.

lishing that the court has authority to exercise in personam jurisdiction over each of the named defendants. *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001). To determine whether personal jurisdiction exists, the court may consider the pleadings and evidence presented through affidavits, and may also order limited discovery to develop jurisdictional facts. *Id.; Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1285 (9th Cir. 1977). Initially, the plaintiffs need only make a prima facie showing that personal jurisdiction exists, that is, they must produce sufficient evidence which, if believed, would establish the necessary jurisdictional facts.

If a nonresident defendant's contacts with the forum state are not sufficiently "continuous and systematic" for general jurisdiction, that defendant may still be subject to jurisdiction on claims related to its activities or contacts with the state. *Burger King v. Rudzewicz,* 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The starting point in an analysis of limited personal jurisdiction in federal court is the applicable state long arm statute. *Aanestad v. Beech Aircraft Corp.,* 521 F.2d 1298 (9th Cir.1974); Fed.R.Civ.P. 4(k); *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1404 (9th Cir.1994). Oregon law provides for personal jurisdiction over any person who has engaged in conduct made actionable under the Oregon Securities Law, ORCP 4J, and the Oregon long arm statute allows the exercise of jurisdiction consistent with that allowed by the Constitution of the United States. ORCP 4L. Because the Oregon long arm statute reaches as far as the Due Process Clause, the court must determine whether the exercise of jurisdiction would comply with due process. *Id.* at 1405.

The Ninth Circuit has developed the following three-part test to determine whether a defendant has had the neces-

sary minimum contacts with the forum state to establish limited personal jurisdiction consistent with due process:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or results from the defendant's forum-related activities; and

(3) exercise of jurisdiction must be reasonable.

*Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir.1995); *see also Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir.1997). If any of the three requirements is not satisfied, then jurisdiction in the forum would deprive a defendant of due process of law.

### a. Purposeful Availment

■ The requirement of purposeful availment ensures that a defendant cannot be sued in a jurisdiction based on only fortuitous or attenuated contacts with that jurisdiction. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. A defendant's conduct and connection with the forum state must be such that the defendant can reasonably anticipate being haled into court there. *Id.* at 474, 105 S.Ct. 2174. "Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable solely to his own actions or are solely the actions of the plaintiff." *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988). Therefore, a defendant "must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.*

Atlas Pearlman, and attorneys Reiss and Mayersohn had three months of e-mail

correspondence with the plaintiffs' representative in Oregon. However, a careful review of the content of the e-mails shows that the correspondence was almost exclusively concerned with ascertaining mailing addresses and fax numbers for the purchasers, and otherwise contained mere acknowledgments of information received and brief status reports in answer to the plaintiffs' inquiries. This can hardly be said to alert a reasonable person to the possibility of being haled into court in Oregon. Therefore, this court does not have personal jurisdiction over defendants Reiss, Mayersohn, and Atlas Pearlman.[6] *See also Sher v. Johnson,* 911 F.2d 1357 (9th Cir.1990).

## 2. The Statutory Securities Claims

The plaintiffs have alleged statutory claims against Kelly (Claim One and Claim Two) for the sale of the debentures and statutory claims against Georges St. Laurent, Jr. for the sale of the debentures (Claim One and Claim Two) and for the sale of the TAC notes (Claim Five).

### a. Defendant Edward Kelly

█ At first glance it would seem that no claim has been stated against Kelly because he is not alleged to have made the misrepresentations or omissions, nor was he present when the misrepresentations or omissions were made. The allegations against defendant Kelly are limited to the following: (1) that he was the "Chief Financial Officer (Principal Accounting Officer) of Vitech America, Inc. and is a citizen of Florida," and (2) that he "participated in or materially aided in the sale of securities to plaintiffs by signing documents in connection with these transactions."

However, ORS 59.115 states:

(1) A person who sells a security is liable as provided in subsection (2) of this section to a purchaser of the security if the person:

(a) Sells a security, other than a federal covered security, in violation of the Oregon Securities Law or of any condition, limitation or restriction imposed upon a registration or license under the Oregon Securities Law; or

(b) Sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), *and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.*

.    .    .    .    .

(3) Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, limited liability company manager, including a member who is a manager, officer or director of such seller, every person occupying a similar status or performing similar functions, *and every person who participates or materially aids in the sale* is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the liability is based. Any person held liable under this section shall be entitled to

---

6. Even if this minimal contact were enough to establish purposeful availment, the balancing of the seven factors to determine reasonableness would result in a finding that the exercise of jurisdiction over these three defendants would be unreasonable. *See Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174.

contribution from those jointly and severally liable with that person.

(4) Notwithstanding the provisions of subsection (3) of this section, a person whose sole function in connection with the sale of a security is to provide ministerial functions of escrow, custody or deposit services in accordance with applicable law is liable only if the person participates or materially aids in the sale and the purchaser sustains the burden of proof that the person knew of the existence of facts on which liability is based or that the person's failure to know of the existence of such facts was the result of the person's recklessness or gross negligence.

ORS 59.115 (emphasis added).

The Oregon courts have given the emphasized language in ORS 59.115(3) a very broad and literal reading. In *Prince v. Brydon*, 307 Or. 146, 764 P.2d 1370 (1988), the court found that an Idaho attorney who prepared documents could be found to have materially aided and participated in a sale of a security.[7] *See also Anderson v. Carden*, 146 Or.App. 675, 684, 934 P.2d 562 (1997) ("There is no question that a person who prepares documentation in connection with a sale of securities is a person who 'participates or materially aids' in the sale"). In *Ainslie v. First Interstate Bank*, 148 Or.App. 162, 939 P.2d 125 (1997) (*Ainslie II*), the Oregon Court of Appeals found that an escrow agent could be liable under the statute, and stated that proof of direct unlawful activity by a defendant "is not *essential* to establish its liability as a participant or material aider." *Ainslie II*, 148 Or.App. at 184, 939 P.2d 125. The "relevant knowledge is of 'the existence of the facts,' not of the unlawfulness of a

sale." *Prince*, 307 Or. at 150, 764 P.2d 1370.

This conclusion was further explained in *Anderson:*

It bears noting that the remedy against nonseller participants is not contingent on the nonseller's violation of any law. . . . [T]he liability of a nonseller participant under ORS 59.115(3) is predicated on the violation of the seller. The nonseller participant becomes liable under ORS 59.115(3) because it has "participated or materially aided" in the sale, not because it has violated any law. The statute affords such persons an affirmative defense in the event that they can establish that they did not know, or could not reasonably have known of the facts on which liability is based. ORS 59.115(3). That imposes what the Supreme Court has recognized as "a substantial burden" on nonseller participants, but, as the court also has observed, "this legislative choice was deliberate." *Prince v. Brydon*, 307 Or. 146, 150, 764 P.2d 1370 (1988).

*Anderson*, 146 Or.App. at 683, 934 P.2d 562.

Therefore, as against a nonseller defendant, the plaintiffs must ultimately prove that there was a sale of securities which involved a violation of Oregon Securities Law, and that each nonseller defendant materially aided or participated in that sale. The nonseller can then avoid liability through proof of the affirmative defense that he "did not know, or could not reasonably have known of the facts on which liability is based." *Id.* Given the broad language of the statute, it appears that the plaintiffs have stated a claim against Kelly. They have alleged fraud on the part of

---

7. An attorney also was found to have "participated or materially aided" in *Ainslie v. Spol-* *yar*, 144 Or.App. 134, 926 P.2d 822 (1996) (*Ainslie I*).

William St. Laurent, and they have presented evidence that, if believed, establishes that Kelly traveled to Oregon twice, conducted at least twelve telephone calls with the plaintiffs' Oregon representative, and aided in the preparation of documents, all in furtherance of the sale of the debentures.

### b. Defendant Georges St. Laurent, Jr.

█ Defendant Georges St. Laurent, Jr. focuses on the allegation that he was a "control person" for Vitech, and argues that the pleadings do not support "control person" liability. The plaintiffs allege his shareholder status, that he made personal guarantees for Vitech debt, that he traveled with William St. Laurent to attend promotional meetings with one or more of the plaintiffs, and that his relationship with his son was that of a business advisor.

For the purposes of this motion to dismiss the Oregon Securities Law claims, this showing is enough. *See Computer Concepts, Inc. v. Brandt*, 137 Or.App. 572, 905 P.2d 1177 (1995). Although the plaintiffs have failed to allege that St. Laurent, Jr. committed the alleged fraud, "the remedy against nonseller participants is not contingent on the nonseller's violation of any law." *Anderson*, 146 Or.App. at 683, 934 P.2d 562.

### 3. Fraud and Conspiracy Claims Against Georges St. Laurent, Jr.

█ The plaintiffs failed to meet the pleading requirement of Rule 9(b) in their First Amended Complaint because they alleged and argued only a few specific allegations of fraud by William St. Laurent. The plaintiffs were allowed to amend their complaint to include all of their allegations in their pleadings and to allege specific allegations of fraud by defendants other than William St. Laurent.

The specific allegations of fraud in the Second Amended Complaint reach only the conduct of William St. Laurent. There is no allegation that Georges St. Laurent, Jr. was present when the alleged misstatements were made or that he had knowledge that the alleged omissions were not communicated to the plaintiffs. There is only an allegation that he was present at two meetings which were attended by plaintiff Susan Mann. The mere fact that the defendant's son is alleged to have made fraudulent statements, even coupled with the fact that the father held stock in the son's company and was possibly the son's business advisor, is not sufficient to satisfy the heightened pleading requirements of Rule 9(b).

### CONCLUSION

Defendant Georges St. Laurent, Jr.'s motion (# 30) to dismiss for failure to state a claim is granted in part and denied in part. St. Laurent, Jr. is dismissed from Claim Three and Claim Six. Defendant Edward Kelly's motion (# 40) to dismiss for failure to state a claim is denied. Defendants Atlas Pearlman, John Mayersohn and Adam Reiss' motion (# 48) to dismiss for lack of personal jurisdiction is granted.