**Theodore M. ELLENWOOD,
et al., Plaintiffs,**

v.

**EXXON SHIPPING COMPANY,
Defendant.**

**Civ. No. 90–86–P–C.**

United States District Court,
D. Maine.

March 26, 1992.

Peter Bennett, Daniel W. Bates, Herbert H. Bennett & Associates, P.A., Portland, Me., for plaintiffs.

Richard G. Moon, Linda D. McGill, Timothy J. O'Brien, Moon, Moss & McGill, Portland, Me., Robert M. Hayes, Charles G. Bakaly, Jr., Robert F. Kramer, Dale M. Cendali, O'Melveny & Myers, New York City, for defendant.

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL

HORNBY, District Judge.

Exxon Shipping Company has renewed its motion for judgment as a matter of law on the Ellenwoods' negligent infliction of emotional distress claims. Fed.R.Civ.P. 50(b). In the alternative, Exxon Shipping asks that I overturn the jury verdict and order a new trial. Fed.R.Civ.P. 59. Exxon Shipping also moves for a new trial and judgment as a matter of law on the breach of contract and promissory estoppel claims, alleging several errors in the jury instructions and other miscellaneous legal errors. I now GRANT the motion for judgment as a matter of law with respect to the negligent infliction of emotional distress claim, DENY the motion for new trial on the negligent infliction count and DENY the motion on the contract and promissory estoppel claims.

#### Emotional Distress

I have previously ruled that the emotional distress claims are governed by maritime

law. *See Ellenwood v. Exxon Shipping Co.*, No. 90–86–P–C, slip op. at 4–5 (Oct. 15, 1991); *see also Ellenwood v. Exxon Shipping Co.*, No. 90–86–P–C, slip op. at 1–3 (Jan. 2, 1992) (granting Exxon Shipping's motion for summary judgment on breach of duty of good faith and fair dealing claim). I will not repeat my reasons here. My research and that of the parties have revealed that reported maritime law, however, is essentially mute as to the controlling substantive rules in this case. Exxon Shipping has argued that since no explicit authorization for the Ellenwoods' claims can be found in maritime law, those claims should be dismissed on that ground alone. Unambiguous dicta in a governing line of maritime cases, however, require me to pursue the subject farther.

In *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986), the United States Supreme Court stated: "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." In that case, the Supreme Court recognized and endorsed lower court adoption of general negligence principles and products liability law as part of the general maritime law. Moreover, the Court recognized that maritime law, in the absence of a statute, is "developed by the judiciary." *Id.* at 864, 106 S.Ct. at 2299.

Under First Circuit authority, state law or general common-law principles may inform the general maritime law when the maritime law is silent on a particular issue, provided that state law does not conflict with Congressional maritime policy. *See Conner v. Aerovox, Inc.*, 730 F.2d 835, 842 (1st Cir.1984), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985) ("There is no question that federal courts may borrow from a variety of sources in establishing common law admiralty rules to govern maritime liability where deemed appropriate."); *Pino v. Protection Maritime Ins. Co., Ltd.*, 599 F.2d 10, 14 (1st Cir.), *cert. denied*, 444 U.S. 900, 100 S.Ct. 210, 62

L.Ed.2d 136 (1979) (applying § 766 of the *Restatement (Second) of Torts* as a "recognized national standard from which to fashion a controlling principle of substantive federal maritime law"); *accord, Lewis v. Timco, Inc.*, 716 F.2d 1425, 1427 (5th Cir.1983) ("In maritime tort cases courts traditionally apply principles of maritime law, as informed by common law tort developments, ... unless a policy determination has been made by Congress.... Admiralty courts make their own decisions but, true to legal analogical processes, do so with an awareness of other courts' solutions to similar problems....").

These cases make clear that I cannot dismiss a claim merely because maritime precedents are silent, but that I should turn to well-established common-law principles of national applicability in determining the scope of a claim in such circumstances. The concern for uniformity, frequently expressed by the courts and emphasized in my order on Exxon Shipping's summary judgment motion, *Ellenwood v. Exxon Shipping Co.*, No. 90–0086–P–C, slip op. at 4 n. 5 (October 15, 1991), supports employing only those common-law principles that have been widely and consistently recognized in land-based law. Furthermore, paramount attention must be paid to Congressional policy directives expressed in maritime legislation. Accordingly, I approach the claim of negligent infliction of severe emotional distress guided by Congressional policy pronouncements embodied in the Jones Act and judicial glosses on those enactments; by time-honored articulations of common-law principles, such as the *Restatement (Second) of Torts;* and by trends in state common-law doctrine.

Much of the parties' argument has focused on several FELA/Jones Act cases.[1] The Ellenwoods' claim for negligent infliction of emotional distress, however, is not a Jones Act claim. They chose not to plead the Jones Act; instead, their claim arises under general maritime law. Nonetheless, FELA/Jones Act case law is a sensible place to look for guidance. The Jones Act articulates Congress' general policy on the limits of seamen's recovery for negligence.

---

**1.** The Jones Act incorporates FELA's standards    for liability. *See* 46 U.S.C. app. § 688(a).

Thus, a court should not lightly exceed any limitations laid down in the Jones Act or in authority interpreting the Jones Act or FELA.

■ In 1977, it seemed clear in this Circuit that recovery for emotional distress under FELA, and thus the Jones Act, required a physical injury. *Bullard v. Central Vt. Ry.*, 565 F.2d 193, 197 (1st Cir. 1977). In 1985, however, a Ninth Circuit decision stated that plaintiffs could recover emotional damages under FELA without any physical injury. *Buell v. Atchison, Topeka & Santa Fe Ry.*, 771 F.2d 1320, 1322–23 (9th Cir.1985). The United States Supreme Court undertook to hear the *Buell* case but then declined to consider this particular issue because of the lack of an adequate record: "Since, through no fault of either party, we do not know what all those facts are in this case, we cannot begin to decide whether respondent will be able to support his allegation that petitioners are liable to him under the FELA." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 570, 107 S.Ct. 1410, 1418, 94 L.Ed.2d 563 (1987). Although the Court declined to rule on this issue, it nevertheless provoked an unfortunate uncertainty in the trial bar and the lower courts by adding, "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity," *id.* at 568, 107 S.Ct. at 1417, and, therefore, that "the question whether one can recover for emotional injury may not be susceptible to an all-inclusive 'yes' or 'no' answer," *id.* at 570, 107 S.Ct. at 1418.

That same year the First Circuit brought the uncertainty home to this jurisdiction. In *Moody v. Maine Cent. Ry. Co.*, 823 F.2d 693 (1st Cir.1987), it affirmed a case from this district granting summary judgment on an emotional distress claim to a defendant where there was no physical injury. But like the United States Supreme Court it succumbed to the temptation to raise other possibilities, thereby engendering uncertainty among trial lawyers and trial courts. It officially read *Buell* as "an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open," *id.* at 694, and concluded that the Supreme Court, "at the very least, [cast] doubt on the doctrine attributed to us in *Bullard* that damages may not be awarded for mental or emotional injuries unaccompanied by physical injury." *Id.* Rather than resolve this open issue after highlighting it, however, the First Circuit declined "the invitation to make this a pioneer case exploring the frontier possibly opened up by *Buell*," and left the trial bar and the trial courts to bear the consequences of the highlighted uncertainty.[2]

In light of the First Circuit's *Moody* declaration, I concluded before trial that Jones Act principles were unclear and that, although the Jones Act was not finally determinative of the issue in this maritime case, its role was sufficiently important that I should allow the negligent infliction claim to go to the jury so that the First Circuit would have a record upon which to rule. Had I followed the old rule (which I do today for reasons I will explain shortly) and been declared wrong, the subsequent reversal by the First Circuit would have required a new trial of this lengthy case which has already consumed thousands upon thousands of dollars. Since an appeal was highly likely, I decided that the more prudent and more economical course was to permit the plaintiffs to put in their case as if the First Circuit had indeed changed the FELA/Jones Act rule and as if the change would affect the governing principle in this

---

2. Tantalizing references to possibilities in other cases not then before the court have been a luxury that appellate courts could afford in more innocent times. Perhaps the practice even helped judges participate in the development of the common law by inviting further litigation. But now we operate in an era where we are told that federal litigation is too frequent and that it is both too time consuming and too expensive. *See* Civil Justice Reform Act of 1990, Pub.L. No. 101–650, tit. I, § 103(a) (1990) (codified as 28 U.S.C. §§ 471–482). When an appellate court raises a new issue without resolving it, it guarantees that the cost of litigation will increase. Another decision point is created: briefs must be written, facts must be adduced, motions must be presented and lower court judges must try to divine what the appellate courts are looking for.

maritime case. I now rule, however, that as a trial court judge I cannot read the First Circuit's musings in *Moody* as having overruled the *Bullard* rule. *Moody* did not explicitly overturn *Bullard*. Certainly there are hints and half-steps there. But as a trial judge I must follow the precedents as they exist. Should the First Circuit decide to overrule *Bullard* and decide that this new FELA/Jones Act principle controls this maritime case, the record has been made and the Circuit can simply reinstate the jury's verdict. On the other hand, if the First Circuit chooses not to overrule *Bullard*, then it is in a position to affirm the judgment on the law.

I therefore conclude that under *Bullard* a physical injury is still required to recover emotional distress damages under FELA. Since the Jones Act incorporates FELA standards for liability, *Bullard* must be read as recognizing a general congressional policy limiting maritime recovery for negligent infliction of emotional distress to those claims based on physical injury. Today I apply that policy in this maritime case.

Applying the *Bullard* rule is not simply the triumph of *stare decisis*. Imposing such a limitation under general maritime principles is supported by what has taken place in other areas. The nationwide movement toward a standard allowing recovery for wholly emotional injury without some physical manifestation has been halting. The *Restatement (Second) of Torts* was quite clear in requiring physical injury as an element of a negligent infliction of emotional distress claim in 1965:

> If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.

*Restatement (Second) of Torts* § 436A (1965). Comment b discusses the three tra-

ditionally favored policy rationales for this rule: first, emotional disturbances without physical consequences have traditionally been regarded as "in the realm of the trivial," and therefore fall "within the maxim that the law does not concern itself with trifles"; second, a physical harm requirement furnishes a "guarantee of genuineness" to the fact-finder, thus limiting the prospects for a flood of fraudulent claims; and third, when the level of culpability reaches only the level of negligence, the "fault is not so great that [the actor] should be required to make good a purely mental disturbance." *Id.*, comment b.[3]

The *Restatement* enunciation of the rule is now over 25 years old, and some jurisdictions, among them Maine, have abandoned the physical injury requirement. *See Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282 (Me.1987). But the trend is not uniform. In *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171 (1982), the Massachusetts Supreme Judicial Court resisted the invitation to allow recovery for negligently inflicted emotional distress in the absence of corresponding physical harm. That court observed in 1982 that "[j]urisdictions allowing recovery for emotional distress without proof of physical harm in negligence cases are clearly in the minority." *Id.* 437 N.E.2d at 174–75; *see also id.* at 175 n. 5 (surveying rules in various jurisdictions). Recent academic commentary continues to reflect the division of authority: "Where the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability, the great majority of courts still hold that in the ordinary case there can be no recovery." W. Page Keaton, et al., *Prosser and Keeton on the Law of Torts* § 54 at 361 (5th ed. 1984). *See also* Comment, *Negligent Infliction of Mental Distress: A Jurisdictional Survey of Existing Limitation Devices and Proposal Based on an Analysis of Objective versus Subjective Indices of Distress*, 33

---

**3.** The *Restatement* did envision a separate tort without physical injury: intentional or outrageous infliction. *See Restatement (Second) of Torts* § 46 (1965). Elimination of the physical injury requirement for the negligence tort essentially eliminates the need for the intentional tort. It is hard to imagine a case in which a factfinder can find intentional and outrageous conduct but not find a breach of the standard of care or negligence.

Vill.L.Rev. 781 (1988) ("Currently, a large number of jurisdictions follow a combination of both the zone of danger and physical manifestation tests as limiting devices on actions for negligent infliction of mental distress.")[4]

■ Thus, the *Restatement* and a significant number of state jurisdictions are in agreement with the Congressional policy choices articulated by the First Circuit in *Bullard.* Therefore, I conclude that a plaintiff alleging negligent infliction of emotional distress under the general maritime law must prove an accompanying physical injury. No evidence of physical injury or physical impact was presented to the jury here.[5] Exxon Shipping's motion for judgment as a matter of law on these claims is therefore GRANTED. The Clerk shall enter judgment for the defendant on Count VIII.[6] Exxon Shipping has not advanced any other argument that would justify granting a new trial. Therefore, Exxon Shipping's motion for new trial on Count VIII is DENIED.

This ruling, of course, also supports my earlier denial of punitive damages. Without a tort recovery, the plaintiffs are not entitled to punitive damages.

### Contract and Promissory Estoppel

[Editor's Note: The remainder of the opinion has not been included for purposes of publication]

I see no reason to disturb my earlier ruling on this part of the jury instruction.

Exxon Shipping's motion for judgment as a matter of law or for a new trial on the contract and promissory estoppel claims is DENIED.

SO ORDERED.

---

**4.** Although the physical injury rule seems arbitrary in the sense that there may be legitimate emotional distress claims without physical injury, it does have the great advantage of being easily defined and determined in today's complex litigation world. With expensive expert testimony available to support or reject almost any claim, a clear and easily-applied rule saves parties large amounts of litigation costs and attorney fees and reduces needed judicial time. Other tests that may involve multitudes of factors such as suggested by the Supreme Court in *Buell,* 480 U.S. at 568–70, 107 S.Ct. at 1417–18, might result in better individual justice in a given case yet so contribute to the expense and time-consuming nature of the litigation process that justice would be delayed and thereby denied in many other cases. In this era of scarce resources courts cannot ignore such effects.

**5.** The Ellenwoods did offer some evidence of loss of sleep, loss of appetite, etc. However, this is clearly not the kind of physical injury contemplated by *Bullard,* nor by the *Restatement (Second) of Torts.*

**6.** Exxon Shipping also argues in its motion for judgment as a matter of law that the evidence was insufficient to support a finding that the Ellenwoods suffered severe emotional distress. I conclude that there was sufficient evidence in the record on both the severity of the Ellenwoods' emotional distress and causation to have created a jury question.

Finally, Exxon Shipping argues that the jury verdict should be overturned because there were no guarantees of genuineness supporting the Ellenwoods' claimed injury. This contention is resolved by my conclusion that physical injury is still a precondition for recovery.