Douville v. Casco Bay Island Transit  CV-98-178-JD  08/18/98
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Susanni Douville, et al.

      v.                          Civil No. 98-178-JD

Casco Bay Island Transit


                    O R D E R


      The plaintiffs, Lillian H. Douville and Donald F. Douville,
brought this action against the defendant, Casco Bay Island
Transit District, asserting claims governed by federal maritime
law.  The plaintiffs allege that they suffered injuries when the
defendant negligently ran the mooring line of a vessel owned and
operated by it over the top of the port railing and failed to
untie the line before the vessel left port.  The defendant admits
that its negligence was the cause of the injuries claimed by the
plaintiffs, but disputes the scope of recoverable damages.
Before the court is the defendant's motion to dismiss the
plaintiffs' claim for negligent infliction of emotional distress
in count III (document no. 4).


                    Background[1]

      The defendant operates a ferry system that transports
passengers, vehicles, and other cargo to and from various ports

_____

      [1] The facts relevant to the instant motion are either not in
dispute or have been alleged by the plaintiffs.

within the navigable waters of Casco Bay, Maine. On July 4, 1995, the plaintiffs, along with their daughter, Susanni, and son-in-law, John R. Hull, Jr.,[2] boarded the Machigonne II, a car-ferry boat owned and operated by the defendant. Upon boarding the Machigonne II, the plaintiffs positioned themselves at the bow of the vehicle deck.

The Machigonne II pulled away from its docked position, but a mooring line attached to its bow remained affixed to a pier cleat. As the Machigonne II continued to pull away from the dock, the mooring line became increasingly taut and stretched across the width of the bow in the direction of the plaintiffs. The mooring line headed towards Lillian Douville, who, due to severe rheumatoid arthritis, was confined to a wheelchair. Lillian Douville's husband and her son-in-law managed to lift the mooring line over her head and then ducked underneath to avoid direct injury to themselves. The Machigonne II continued to pull away with the mooring line still affixed to the pier cleat until the mooring line eventually snapped under the tension, ricocheted back into the Machigonne II, and struck Susanni Douville on her hand. As a result of the accident, the plaintiffs claim they suffered emotional distress and Lillian Douville claims her

---

[2] Initially, Susanni Douville and John Hull, Jr. were also parties to this action, but they have since settled their claims against the defendant.

arthritic condition was exacerbated.

The plaintiffs brought this action against the defendant on January 8, 1997, in the United States District Court for the District of Maine.[3]  In counts I and II, the plaintiffs allege negligence and failure to warn, respectively, under general maritime law.  In count III, Lillian Douville seeks recovery for negligent infliction of emotional distress caused by her near-injury and by witnessing her daughter's injury.  In count III, Donald Douville seeks recovery for negligent infliction of emotional distress caused by witnessing his wife's near-injury and his daughter's injury.  In count IV, Donald Douville seeks recovery for loss of his wife's consortium.

On April 23, 1997, the district court in Maine denied the defendant's motion to dismiss the loss of consortium claim.  On November 14, 1997, the defendant moved to dismiss count III pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  That motion, which was not resolved prior to the case being transferred to this district, is currently before the court.  However, because the defendant filed an answer to the plaintiffs' complaint on March 12, 1997, the pleadings have closed under Fed. R. Civ. P. 7(a).  Thus, the

---

[3] The case was reassigned to this court on March 30, 1998, because Susanni Douville was offered, and accepted, a law clerk position for a magistrate judge within the District of Maine.

court will treat the defendant's motion to dismiss as a motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(c).

## Discussion

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion.  See Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986).  In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)).  In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor of the plaintiffs. See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c) motion); Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c) motion).  Great specificity is not required to survive a Rule 12 motion.  "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of fact.'"  Garita, 958 F.2d at 17 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)).  In the end, the

4

court may not enter judgment on the pleadings unless it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief.'" Santiago de Castro, 943 F.2d at 130 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

This action presents the following issues: (1) whether recovery of damages for negligent infliction of emotional distress is cognizable under the general maritime law; and (2) if such an action is available, what standard must be met to prevail on the claim. The court addresses these issues seriatim.

I. Recovery of Damages for Negligent Infliction of Emotional Distress Under Maritime Law

The issue of whether the plaintiffs can recover for negligent infliction of emotional distress under general maritime law is a question of first impression in the First Circuit. See Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1288 (1st Cir. 1993) (court refused to address the plaintiff's inadequately developed emotional distress claims). Unsettled issues of general maritime law should be resolved by a judicial analysis of congressional enactments in the field of maritime law, relevant state legislation, and state common law. See Miles v. Apex Marine Corp., 498 U.S. 19, 27 (1990). For situations not

5

directly governed by congressional legislation or maritime precedent, the general maritime law is "developed by the judiciary." East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-65 (1986). However, the process of judicial development should attempt to preserve the "harmony and uniformity" of the general maritime law. Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996) (quoting Western Fuel Co. v. Garcia, 257 U.S. 233, 242 (1921)).

Case law under the Jones Act guides the development of the general maritime law. See Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1408 (9th Cir. 1994). The Jones Act states, in part:

> Any seaman who suffers personal injury in the course of his employment may maintain . . . an action for damages at law [and] the common-law rights and remedies in cases of personal injury to railroad employees shall apply . . . .

46 U.S.C.A. § 688 (West 1975). The Federal Employees Liability Act ("FELA"), 45 U.S.C. §§ 51-60, governs the remedies available to injured railroad employees. Because the Jones Act incorporates FELA, see Miles, 498 U.S. at 32, cases interpreting FELA are also instructive for the development of the general maritime law, see Chan, 39 F.3d at 1408.

Workers who bring suit under FELA may bring claims for damages for emotional distress. See Consolidated R.R. Corp. v. Gottshall, 512 U.S. 532, 556 (1994). In Gottshall, the Supreme

Court interpreted the term "injury" under FELA to extend beyond physical injuries to encompass emotional injuries, reasoning that "emotional injuries can be just as debilitating as physical injuries." Id. at 550. In reaching this conclusion, the Court looked beyond the statute to the common law principle universally recognized in nearly all United States jurisdictions that negligent infliction of emotional distress is a meritorious claim cognizable under general maritime law. See id.

Similarly, the Ninth Circuit recognizes a claim for negligent infliction of emotional distress for non-seafarers suffering non-fatal injuries on the high seas. See Chan, 39 F.3d at 1409. The court in Chan, relying on Gottshall, found no reason to disallow meritorious emotional distress claims under general maritime law when these claims are available to workers under FELA and to plaintiffs in nearly all fifty states. See id. The Gottshall and Chan holdings have been followed in other jurisdictions confronted with general maritime law claims for negligent infliction of emotional distress. See Williams v. Carnival Cruise Lines, Inc., 907 F. Supp. 403 (S.D. Fla. 1995) (recovery of damages by passengers for negligent infliction of emotional distress allowable); Loeber v. United States, No. 89-2483, 1992 WL 245654, at *1 (E.D. La. Sept. 14, 1992) (recognizing claims for emotional distress under maritime law);

7

but cf. <u>Rollins v. Peterson Builders, Inc.</u>, 761 F. Supp. 918, 929 (D.R.I. 1990) (pre-<u>Gottshall</u> case) (plaintiffs could not satisfy requisites for recovery).

The defendant argues that since the Maine court chose not to follow <u>Chan</u> when it denied the defendant's motion to dismiss the loss of consortium claim, this court's use of <u>Chan</u> for purposes of this motion would be inconsistent. The court disagrees. Because the incident in <u>Chan</u> occurred on the high seas, the court turned to the remedial provisions of the Death on the High Seas Act ("DOHSA") that limits recoverable damages in wrongful death suits to "a fair and just compensation for the pecuniary loss sustained." 46 U.S.C.A. § 762 (West 1975); <u>see also</u> <u>Chan</u>, 39 F.3d at 1407. The <u>Chan</u> court reasoned that, because damages for loss of consortium and loss of society are unavailable to non-dependants of those killed on the high seas, <u>a fortiori</u>, these remedies are unavailable to non-dependants of those merely injured. <u>See</u> <u>id.</u> at 1408. To have held otherwise would not have served the "goal of uniformity in maritime cases." <u>Id.</u>

Because this case occurred within the coastal waters of Maine, neither <u>Chan</u>'s holding nor its rationale apply to the loss of consortium claim here.[4] The <u>Chan</u> court explicitly

---

[4] DOSHA only applies to actions "occurring on the high seas beyond a marine league from the shore of any State." 46 U.S.C.A. § 761 (West 1975).

8

acknowledged this distinction by stating that loss of consortium and loss of society damages are recoverable to passengers and their beneficiaries for deaths or injuries occurring in state territorial waters.  See id. at 1407.  Thus, there is no inconsistency in allowing the loss of consortium claim to go forward while following Chan's ruling concerning recovery of damages for negligent infliction of emotional distress.

Negligent infliction of emotional distress claims in maritime law have been recognized by the Supreme Court and by courts in the Fifth, Ninth, and Eleventh Circuits.  Given the rationale of those cases, the lack of cases to the contrary, and the mandate to preserve the "harmony and uniformity" of maritime law, the court holds that the plaintiffs may pursue a claim for negligent infliction of emotional distress.

II.  Applicable Standard of Recovery for Negligent Infliction of Emotional Distress

Having concluded that the general maritime law allows a claim for negligent infliction of emotional distress, the court must now determine the scope of the cause of action.  Courts have placed limits on such claims to control possible abuse through fabricated claims and claims far removed from the negligent act alleged to have caused them.  See Gottshall, 512 U.S. at 545 (citing Maloney v. Conroy, 545 A.2d. 1059, 1061 (Conn. 1981)).

9

Therefore, "policy considerations mandate that infinite liability be avoided by restrictions that . . . narrow the class of potential plaintiffs." Id. at 546 (quoting Tobin v. Grossman, 249 N.E.2d 419, 423 (N.Y. 1969)).

To address these concerns, courts have adopted three approaches. See Gottshall, 512 U.S. at 546. The first and most restrictive of these is the "physical impact" test, which requires the plaintiff seeking damages for emotional injury to sustain "a physical impact (no matter how slight) or [physical] injury due to the defendant's conduct." Id. The second test is referred to as the "zone of danger" test, which limits recovery for emotional injuries to those "who sustain a physical impact as a result of the defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." Id. at 547-48. This test may also require an accompanying "physical manifestation" of the emotional injury. See id. at 549 n.11; Williams, 907 F. Supp. at 407. The last and least restrictive limiting test is the "relative bystander" test, which turns on whether the defendant could reasonably have foreseen the plaintiff's emotional injury. See Gottshall, 512 U.S. at 547-48. This test offers three factors to consider in determining foreseeability:

> (1) Whether the plaintiff was located near the scene of
> the accident as contrasted with one who was a distance

10

away from it. (2) Whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

Id. (quoting Dillon v. Legg, 441 P.2d 912, 920 (Cal. 1968)).

The plaintiffs urge that the court should adopt the relative bystander test, which has been incorporated into Maine law. See, e.g., Cameron v. Pepin, 610 A.2d 279, 284-85 (Me. 1992). However, in Gottshall, the Supreme Court held that FELA incorporates the zone of danger test. See 512 U.S. at 556-57. To preserve uniformity, the Supreme Court stated that a court is not allowed to sanction more expansive remedies under general maritime law than those remedies prescribed under the Jones Act. See Miles, 498 U.S. at 32-33. Because the Jones Act incorporates FELA and the Supreme Court adopted the zone of danger test to FELA claims, this court concludes that this is the appropriate test for negligent infliction of emotional distress claims brought under the general maritime law.

The defendant argues that the court should also import the physical manifestation test. The Supreme Court left open the issue as to whether an accompanying physical manifestation is necessary for recovery under FELA. See Gottshall, 512 U.S. at 569 n.3 (Ginsburg, J., dissenting). Despite the Court's failure

11

to decide this issue, most cases prior to and following Gottshall require some form of physical manifestation to sustain a negligent infliction of emotional distress claim. See In re United States, 418 F.2d 264, 268 (1st Cir. 1969) (action does not lie for negligently inflicted emotional disturbances alone, but requires physical consequences of mental disturbance); Williams, 907 F. Supp. at 407 (holding only plaintiffs within the zone of danger experiencing a physical manifestation may recovery for negligent infliction of emotional distress); Ellenwood v. Exxon Shipping Company, 795 F. Supp. 31, 35 (D. Me. 1992), aff'd, 984 F.2d 1270 (1st Cir. 1993) ("plaintiff alleging negligent infliction of emotional distress under the maritime law must prove an accompanying physical injury"); see also W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 54, at 361 (5th ed. 1984) (majority of jurisdictions hold recovery unavailable for mental disturbance unless accompanied by physical injury, illness, or other physical consequence); Restatement (Second) of Torts § 436A (1965) (rejects liability for emotional disturbances unaccompanied by bodily harm or other compensable damages). One advantage of requiring a physical manifestation is that the requirement serves to limit "the prospects for a flood of fraudulent claims." Ellenwood, 795 F. Supp. at 34; see also, e.g., Williams, 907 F. Supp. at 407. The court, in accord with

12

the weight of authority on the issue, concludes the plaintiffs must show not only that they were within the zone of danger, but also that they suffered a physical manifestation of their alleged emotional injuries.

In the case at bar, Lillian Douville's allegations in count III state a cognizable claim for negligent infliction of emotional distress under this standard. Her proximity to the tensing mooring line and the fact that her husband and son-in-law had to lift the mooring line to prevent it from hitting her placed Lillian Douville within the zone of danger. She also alleges that the emotional distress she suffered exacerbated her arthritis. The court concludes that her pleadings satisfy the requirements necessary to state a claim for relief on the theory of negligent infliction of emotional distress.

Donald Douville's allegations are also broad enough to encompass a cognizable claim for negligent infliction of emotional distress. He also was within the zone of danger. The record is silent on the issue of whether or not he suffered a physical manifestation of his emotional distress, but the defendant has not demonstrated that he can prove no set of facts that would entitle him to relief. Therefore, Donald Douville is entitled to bring forth evidence in support of his claim, which must ultimately include proof that he suffered a physical

13

manifestation of his emotional distress.

## Conclusion

For the reasons stated above, the defendant's motion to dismiss the claims in count III (document no. 4) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

August 18, 1998

cc:  Tina Schneider, Esquire
     William H. Welte, Esquire
     William S. Brownell, Clerk, USDC - ME

14